# United States Court Of Appeals
# For Eighth Circuit
### No. 24-1410

---

Association for Government Accountability; Mark Koran, Senator; Calvin Bahr, Senator; James Roschen; Debra Roschen; Megan Nelson; Andrew Nelson; Dawn Appel; Daniel Appel; Cindy Kohn; David Kohn; Tammi Johnson; Larry Johnson; Meghan Hewitt; A.H., by her next friend and parent Meghan Hewitt; Sarah Johnson; A.J., by his next friend and parent Sarah Johnson,

*Appellants,*

v.

Steve Simon, individually and in his official capacity as Minnesota Secretary of State, or his successor; David Maeda, individually and in his official capacity as Director of Elections for State of Minnesota, or his successor,

*Appellees.*

---

On Appeal from the United States District Court
For the District of Minnesota
District Court No. 0:23-cv-03159-PAM-DTS

---

## APPELLANTS' PRINCIPAL BRIEF

---

Erick G. Kaardal, 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Appellants*

March 13, 2024

Nathan J. Hartshorn, 0320602
Allen Cook Barr, 0399094
Office of Minnesota Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101
Telephone: 651-757-1252
Email: nathan.hartshorn@ag.state.mn.us
Email: allen.barr@ag.state.mn.us
*Attorneys for Appellees*

## SUMMARY OF THE CASE

Twenty-four states, including Minnesota, disclose private driver data exclusively to a single Delaware corporation called Electronic Registration Information Center, Inc. (ERIC), for voter-registration-related uses. In doing so, they violate the Driver Privacy Protection Act (DPPA) and Help America Vote Act (HAVA). It is "discriminatory" under 52 U.S.C. § 21083(a)(1)(A) to disclose citizens' private driver data to ERIC, but no one else. Government disclosure of a citizen's private data can lead to crimes such as stalking, harassment and identity theft. DPPA, 18 U.S.C. § 2721, et seq., ensures private driver data is protected. If private driver data is disclosed outside the narrowly-drawn, specific exceptions, then those "individuals"—including state officials and employees—who are connected to unlawful disclosure of the private driver data for voter-registration-related uses—are liable for prospective injunctive relief under 18 U.S.C. §§ 2724(a) and 2725(2). And, HAVA's express preemption provision of 52 U.S.C. § 21084 and limiting provision of 52 U.S.C. § 21083(5)(B)(i) require the matching of private driver data to be only between SOS and the State's department of motor vehicles. Nine states, including Missouri, have withdrawn from ERIC because of concerns over ERIC's DPPA and HAVA violations. The lower court denied a motion for preliminary injunction and granted the Secretary's motion to dismiss. Counsel requests 15 minutes for oral argument.

i

## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1A of the United States Court of Appeals for Eighth Circuit, all of the appellants are individuals, except Association for Government Accountability (AGA), an unincorporated association. AGA has no stock. No parent corporation nor publicly held corporation owns any of the total ownership interests in AGA.

Appellate Case: 24-1410    Page: 3    Date Filed: 03/14/2024 Entry ID: 5373446

# TABLE OF CONTENTS

SUMMARY OF THE CASE ...................................................................... i

CORPORATE DISCLOSURE STATEMENT .......................................... ii

TABLE OF AUTHORITIES ................................................................... vi

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE ISSUES ............................................................... 2

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF THE ARGUMENT ....................................................... 10

ARGUMENT ........................................................................................ 11

I.     The standard of review is de novo. ............................................. 11

II.    The lower court's grant of the motion to dismiss should be
       reversed. .................................................................................. 11

       A. The terms of § 2724(a) and § 2725(2) unambiguously authorize
          civil actions against "individuals" such as Simon and Maeda who
          are "individuals." ................................................................. 11

       B. DPPA's civil-enforcement provisions create a private right of
          action against "individuals," including DPPA-violating state
          officials and employees. ........................................................ 14

       C. The lower court mistakenly interpreted DPPA's civil-
          enforcement provision precluding injunctive relief against state
          officials and employees. ........................................................ 18

III.   Preliminary injunctive relief is justified. ................................... 29

       A. AGA is likely to succeed on the merits. ................................ 29

          1. DPPA's rule is non-disclosure of private driver data with no
             exception for voter-registration-related uses. ..................... 30

Appellate Case: 24-1410     Page: 4     Date Filed: 03/14/2024 Entry ID: 5373446

2. HAVA preemption applies because SOS's disclosure of private driver data exclusively to the Delaware corporation ERIC for voter-registration-related uses is "discriminatory" and "inconsistent" with HAVA's requirements. ........................................ 31

   (1) The Supremacy Clause means state laws and contracts inconsistent with federal laws are preempted. ..................................... 31

   (2) HAVA's § 21084 is an express preemption provision preempting state "election technology and administration requirements" which are "inconsistent" with federal election laws. ........................................................ 32

   (3) SOS's disclosures of private driver data exclusively to ERIC are preempted by 52 U.S.C. § 21083(a)(1)(A), which requires that the State implement the statewide voter registration system and list in a non-discriminatory manner. ..................................................................... 32

   (4) Preemption applies because SOS's disclosure of private driver data to ERIC for voter-registration-related uses is inconsistent with HAVA's prohibition on state-sponsored voter registration drives. .................................... 37

   (5) Both DPPA and HAVA protect the privacy of private driver data and preempt Minnesota Statutes § 201.13(d) and SOS-ERIC contract authorizing SOS to disclose private driver data to ERIC for voter-registration-related uses. .................................................................... 41

3. DPPA's "government function" exception does not apply to the ERIC agreement. ................................................... 45

   (1) SOS's argument for DPPA "government function" exception is not supported by the facts. ................................ 45

   (2) ERIC is not performing a government function because the agreement specifically states that ERIC is not an agent, fiduciary, partner, nor joint venturer of SOS. ........................... 46

   (3) ERIC is not performing a government function because the disclosure of private driver data to ERIC monthly

Appellate Case: 24-1410   Page: 5   Date Filed: 03/14/2024 Entry ID: 5373446

and at least every 60 days is unnecessarily frequent to
support ERIC in producing its reports. .................................... 46

(4) "Improve the accuracy of the voter registration records
in the SVRS" can't be the government function of the
ERIC contract because SOS and DPS are using the
private driver data daily and SOS already has the private
driver data to contact eligible-but-unregistered (EBU)
persons. ............................................................................... 47

(5) "SVRS list maintenance" can't be the government
function of the ERIC contract because SOS has not
obtained the prior consent from local officials to
delegate their government function to SOS. ........................ 49

4. The driver data disclosures to ERIC under Minnesota law
and the ERIC Contract do not satisfy DPPA's research
exception. ................................................................................... 49

5. None of the remaining DPPA exceptions are satisfied. ............. 50

B. A preliminary injunction would prevent AGA's continuing
irreparable injury. ............................................................................... 50

C. The balance of harms favors granting the preliminary injunctive
relief. .................................................................................................... 51

D. Granting preliminary injunctive relief is in the public interest. ...... 52

CONCLUSION .............................................................................................. 53

CERTIFICATE OF COMPLIANCE ............................................................ 54

Use of AI Technology Certification ............................................................... 55

Appellate Case: 24-1410     Page: 6     Date Filed: 03/14/2024 Entry ID: 5373446

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Association for Government Accountability v. Simon,*
2024 WL 692713 (D. Minn. 2024) .................................................................. 1

*Attwood v Clemons,*
818 F. App'x 863 (11th Cir. 2020) ........................................................... 23, 28

*Bacon v. Neer,*
631 F.3d 875 (8th Cir. 2011) ...................................................................... 27

*Blessing v. Freestone,*
520 U.S. 329 (1997) ............................................................................. 15, 16

*Botz v. Omni Air Intern.,*
134 F. Supp. 2d 1042 (D. Minn. 2001) ......................................................... 19

*Calzone v. Hawley,*
866 F.3d 866 (8th Cir. 2017) ...................................................................... 24

*Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S,*
566 U.S. 399 (2012) ................................................................................. 34

*Cilek v. Office of Minnesota Secretary of State,*
941 N.W.2d 411 (Minn. 2020) .................................................................... 36

*City of Racho Palos Verdes v. Abrams,*
544 U.S. 113 (2005) ............................................................................. 14, 15

*Clingman v. Beaver,*
544 U.S. 581 (2005) ................................................................................. 33

*Colon-Marrero v. Velez,*
813 F.3d 1 (1st Cir. 2016) .................................................................. 15, 16, 17

*Commissioner v. Clark,*
489 U.S. 726 (1989) ................................................................................. 31

*Connecticut Nat. Bank v. Germain,*
503 U.S. 249 (1992) ............................................................................. 11, 41

Appellate Case: 24-1410     Page: 7     Date Filed: 03/14/2024 Entry ID: 5373446

*Dataphase Sys., Inc. v. C L Sys., Inc.,*
  640 F.2d 109 (8th Cir. 1981) ...............................................................passim

*Desert Palace, Inc. v. Costa,*
  539 U.S. 90 (2003) ...............................................................................11, 41

*Duit Constr. Co. v. Bennett,*
  796 F.3d 938 (8th Cir. 2015) ..................................................................... 24

*Ela v. Destefano,*
  869 F.3d 1198 (11th Cir. 2017) ...........................................................10, 18

*Ex parte Young,*
  209 U.S. 123 (1908) ...............................................................................passim

*Ferguson v. City of Charleston,*
  532 U.S. 67 (2001) .............................................................................2, 36, 37

*Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,*
  458 U.S. 141 (1982) ................................................................................... 20

*Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,*
  554 U.S. 33 (2008) ..................................................................................... 34

*Gade v. National Solid Wastes Management Assn.,*
  505 U.S. 88 (1992) ..................................................................................... 31

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002) ................................................................................... 15

*Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,*
  471 U.S. 707 (1985) ................................................................................... 19

*Hines v. Davidowitz,*
  312 U.S. 52 (U.S. 1941) ............................................................................. 31

*ICC v. Texas,*
  479 U.S. 450 (1987) ................................................................................... 34

*Johnson v. Griffin,*
  69 F.4th 506 (8th Cir. 2023) ...................................................................... 24

Appellate Case: 24-1410    Page: 8    Date Filed: 03/14/2024 Entry ID: 5373446

*Johnson v. Minneapolis Park & Recreation Bd.*,
  729 F.3d 1094 (8th Cir. 2013) ........................................................ 11

*Jones v. Vilsack,*
  272 F.3d 1030 (8th Cir. 2001) ........................................................ 21

*Kansas v. Garcia,*
  140 S. Ct. 791 (2020) ........................................................ 31

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ........................................................ 23, 27

*Lewis v. Clarke,*
  581 U.S. 155 (2017) ........................................................ 23, 27

*Maracich v. Spears,*
  570 U.S. 48 (2013) ........................................................ passim

*Maryland v. Louisiana,*
  451 U.S. 725 (1981) ........................................................ 21

*McDaniel v. Presythe,*
  897 F.3d 946 (8th Cir. 2018) ........................................................ 24

*McDonough v. Anoka Cnty.,*
  799 F.3d 931 (8th Cir. 2015) ........................................................ 2

*Minn. Citizens Concerned for Life, Inc. v. Swanson,*
  692 F.3d 864 (8th Cir. 2012) ........................................................ 11

*Nat'l Assoc. of the Deaf v. Florida,*
  980 F.3d 763 (11th Cir. 2020) ........................................................ 23, 27

*Obama for America v. Husted,*
  697 F.3d 423 (6th Cir. 2012) ........................................................ 2, 33

*Orduno v. Pietrzak,*
  932 F.3d 710 (8th Cir. 2019) ........................................................ 12, 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ........................................................ 22, 23, 27

Appellate Case: 24-1410     Page: 9     Date Filed: 03/14/2024 Entry ID: 5373446

*Phelps-Roper v. Nixon,*
    545 F.3d 685 (8th Cir. 2008) ................................................................. 53

*Potocnik v. Carlson,*
    9 F.Supp.3d 981 (D. Minn. 2014) ................................................... 7, 25

*Reno v. Condon,*
    528 U.S. 141 (2000) ............................................................................. 19

*Roudachevski v. All-American Care Centers,*
    648 F.3d 701 (8th Cir. 2011) ............................................................... 52

*Rubin v. United States,*
    449 U.S. 424 (1981) ............................................................................. 11

*Schneidewind v. ANR Pipeline Co.,*
    485 U.S. 293 (1988) ............................................................................. 19

*Senne v. Village of Palatine, Ill.,*
    695 F.3d 597 (7th Cir. 2012) ......................................................... 20, 46

*Sierra Club v. United States Army Corp. of Eng'rs,*
    645 F.3d 978 (8th Cir. 2011) ............................................................... 52

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016) ......................................................................... 51

*Turtle Island Foods, SPC v. Thompson,*
    992 F.3d 694 (8th Cir. 2021) ............................................................... 11

*United States v. Hohri,*
    482 U.S. 64 (1987) ............................................................................... 34

*United States v. Lopez,*
    514 U.S. 549 (1995) ............................................................................. 19

*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235 (1989) ............................................................................. 34

*Webb v. City of Maplewood,*
    889 F.3d 483 (8th Cir. 2018) ............................................................... 24

Appellate Case: 24-1410    Page: 10    Date Filed: 03/14/2024 Entry ID: 5373446

*Wellons v. Northwest Airlines, Inc.,*
  165 F.3d 493 (6th Cir. 1999) ...................................................................19, 20

*Winter v. National Resource Defense Council, Inc.,*
  555 U.S. 8 (2008) ................................................................................... 52

*Yang v. Robert Half Intl., Inc.,*
  79 F.4th 949 (8th Cir. 2023) ..................................................................... 11

**Statutes**

18 U.S.C. § 2715(2) ...................................................................................... 10

18 U.S.C. § 2721 .....................................................................................passim

18 U.S.C. § 2721(a) ................................................................... 20, 28, 30, 42

18 U.S.C. § 2721(a)(1)-(2) ........................................................................... 31

18 U.S.C. § 2721(b) ................................................................... 20, 28, 30, 42

18 U.S.C. § 2721(b)(1) ............................................................................45, 46

18 U.S.C. § 2721(b)(1–14) ........................................................... 20, 29, 30

18 U.S.C. § 2721(b)(5) ................................................................................. 49

18 U.S.C. § 2721(b)(12) ............................................................................... 31

18 U.S.C. § 2721(c) ...................................................................................... 30

18 U.S.C. § 2723 ..................................................................................17, 20, 25

18 U.S.C. § 2724 ..................................................................................12, 13, 51

18 U.S.C. § 2724(a) ...............................................................................passim

18 U.S.C. § 2724(b)(4) ...........................................................................51, 52

18 U.S.C. § 2725 .......................................................................................... 13

18 U.S.C. § 2725(2) ................................................................................passim

Appellate Case: 24-1410     Page: 11     Date Filed: 03/14/2024 Entry ID: 5373446

18 U.S.C. § 2725(3) ................................................................. 22

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1292(a) ................................................................ 1

42 U.S.C. § 1983 ............................................................. passim

52 U.S.C. § 20901(b)(1)(C) ............................................. 40, 41

52 U.S.C. § 21083 ......................................................... passim

52 U.S.C. § 21083(a)(1)(A) ............................................ passim

52 U.S.C. § 21083(a)(2)(A) ................................................. 49

52 U.S.C. § 21083(5)(B)(i) .............................................. passim

52 U.S.C. § 21084 ......................................................... passim

Minn. Stat. § 13.01 ............................................................... 35

Minn. Stat. § 171.12, subd. 7a .................................... 6, 22, 44

Minn. Stat. § 201.022 ........................................................... 49

Minn. Stat. § 201.022, subd. 1 (8, 9) ................................... 49

Minn. Stat. § 201.091 ........................................................... 35

Minn. Stat. § 201.13 .............................................................. 6

Minn. Stat. § 201.13(d) .................................................. passim

Minn. Stat. § 201.13, subd. 3(d) ................................ 21, 22, 26

Pub. L. 107–252 .................................................................. 32

U.S. Const., Art. VI, cl. 2 ..................................................... 19

U.S. Const., Art. VI, ¶ 2 ...................................................... 19

U.S. Const., Art. § 4, Cl. 1 ................................................... 19

Appellate Case: 24-1410    Page: 12    Date Filed: 03/14/2024 Entry ID: 5373446

**Rules**

FED. R. APP. P. 26.1 ................................................................ ii

FED. R. APP. P. 32 (a)(7) ......................................................... 55

**Regulations**

11 C.F.R. § 100.133 ................................................................ 37

Appellate Case: 24-1410   Page: 13   Date Filed: 03/14/2024 Entry ID: 5373446

# JURISDICTIONAL STATEMENT

This appeal arises from the U.S. District Court for District of Minnesota judgment filed on February 20, 2024 (R. Doc. 42) based upon the district court's Memorandum and Order filed on February 20, 2024 (App. 1–10; R. Doc. 41), granting the Defendants' motion to dismiss (Nov. 15, 2023) (R. Doc. 9)) and denying Appellants' motion for preliminary injunction (Nov. 28, 2023) (R. Doc. 11) (unpublished decision at *Association for Government Accountability v. Simon*, 2024 WL 692713 (D. Minn. 2024)). The Memorandum and Order and Judgment adjudicated all claims as to all parties. The district court's jurisdiction exists under DPPA, 18 U.S.C. § 2721. Under 28 U.S.C. §§ 1291 and 1292(a), the court of appeals shall have jurisdiction from all final decisions of the federal district courts and from orders denying motions for preliminary injunctions. The Notice of Appeal was filed on February 26, 2024. (R. Doc. 45).

1

# STATEMENT OF THE ISSUES

1. Whether DPPA's civil penalty provision precludes appellants from seeking prospective injunctive relief against state officials, individually, for violating federal privacy protection laws when state officials, under Minnesota Statutes § 201.13(d) and SOS-ERIC contract, disclose private driver data to ERIC, a Delaware corporation, for voter-registration-related uses.

   Apposite statutory provision: Driver Privacy Protection Act (DPPA), 18 U.S.C. § 2721, et seq.

   Apposite cases: *Maracich v. Spears*, 570 U.S. 48 (2013); *McDonough v. Anoka Cnty.*, 799 F.3d 931 (8th Cir. 2015); *Ex parte Young*, 209 U.S. 123 (1908).

2. Whether HAVA and DPPA preempt SOS's disclosures of private driver data to ERIC because the disclosures are "discriminatory" and "inconsistent" with HAVA's requirements and because the disclosures fail to satisfy DPPA's "government function" or "research" exceptions.

   Apposite statutory provision: DPPA; Help America Vote Act (HAVA), 52 U.S.C. §§ 21083, 21084

   Apposite cases: *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012); *Ferguson v. City of Charleston*, 532 U.S. 67 (2001); *Maracich*, 570 U.S. 48.

3. Whether the lower court's denial of the motion for preliminary injunction should be reversed because the motion for preliminary injunction should have been granted.

   Apposite statutory provision: DPPA; HAVA

   Apposite cases: *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109 (8th Cir. 1981) (en banc); *Maracich,* 570 U.S. 48; *McDonough*, 799 F.3d 931.

Appellate Case: 24-1410    Page: 15    Date Filed: 03/14/2024 Entry ID: 5373446

## STATEMENT OF THE CASE

The Appellant AGA[1] seeks to reverse the district court's decision granting the defendants' motion to dismiss and denying AGA's preliminary injunction motion.

AGA, in its Amended Complaint and in its preliminary injunction documents, asserted that the Appellees Minnesota Secretary of State Steve Simon and Director of Elections David Maeda[2] violated DPPA by disclosing private driver data from the state's motor vehicle department to ERIC for voter-registration-related uses, including SOS's state-sponsored voter-registration drives. App. 2; R. Doc. 41, at 2. AGA sought preliminary injunctive relief.[3]

Under HAVA, a state's motor vehicle service (department) is to provide to the office of the Secretary of State, from the motor vehicle service's data base, driver license data. 52 U.S.C. § 21083(5)(B)(i). The data is used to verify the accuracy of information on the voter registration application and to update records in the state-wide voter registration system. SOS entered into an agreement with the Minnesota Department of Public Safety, acting through its Driver and Vehicle Services division, to implement the congressional mandate under HAVA to match the private driver data with the SOS's statewide voter registration system and list (SVRS). But, SOS has

---

[1] "AGA" (Association for Government Accountability) includes all Appellants unless otherwise identified.
[2] References to the "Secretary" or "SOS" to include Steve Simon and David Maeda unless otherwise identified.
[3] The Amended Complaint did include other forms of relief, but they are not issues before this Court.

Appellate Case: 24-1410     Page: 16     Date Filed: 03/14/2024 Entry ID: 5373446

another, different agreement with ERIC to disclose the same driver data to ERIC for voter-registration-related uses. *See* Amend. Compl. Ex. 3, App. 111–114; R. Doc. 7–3, at 1–4.

ERIC is a non-governmental, private party because it is a Delaware corporation. (R.Doc. 15, Kaardal Decl., Ex. 14). The lower court decision inaccurately referred to ERIC as a "consortium." App. 3; R. Doc., at 3. A dictionary definition of "consortium" is "a group of companies that join or associate in an enterprise." Consortium, Black's Law Dictionary (11th ed. 2019). Since ERIC is actually incorporated in Delaware as a corporation, it is not a consortium. (R.Doc. 15, Kaardal Decl., Ex. 14).

Minnesota is one of 24 states that are currently in an agreement with ERIC. Minnesota and the other 23 states disclose all records in the state's moto vehicle database (private driver data) exclusively to ERIC. Amend. Compl. ¶51. App. 19; R. Doc. 7, at 9. Once provided to ERIC, ERIC creates lists of unregistered potential eligible voters referred to as "EBUs," eligible but unregistered. *Id.* ¶53, App. 20; R. Doc. 7, at 10. This list includes individuals who have declined to register to vote. *Id.* ¶¶59–60, App. 21; R. Doc. 7, at 11.

4



How EBU Lists Are Created

EBUs are the "individuals in the motor vehicle file who do not have a matching voter record."

Amend. Compl. ¶54; App. 20–21; R. Doc. 7, at 10–11.

The diagram is explained as follows. At the Minnesota Department of Public Safety, the Motor Vehicle division, people are provided the opportunity to register to vote.

- People may either register to vote or decline to register to vote.
- The DPS database, therefore, contains both people who have registered to vote and those who have declined to register to vote.
- When ERIC receives the DPS database and the statewide voter registration database (the SVRS is mandated under HAVA), ERIC compares them to determine who has declined to register to vote or who is unregistered.
- SOS and ERIC understand that the people who have declined to register to vote at DPS are individuals who are in the DPS database, but who do not have a matching voter record in the SVRS database.

Appellate Case: 24-1410    Page: 18    Date Filed: 03/14/2024 Entry ID: 5373446

- ERIC creates an EBU list (potentially eligible but unregistered voters) of these people who have declined to register to vote or are unregistered to vote, returning the EBU list to SOS.
- Under the ERIC contract SOS is obligated to contact "each and every" person listed on the EBU list.

Honey Decl. ¶34, 35, App. 374–375; R. Doc. 16, at 13–14.

Once the EBUs are returned to SOS, the ERIC agreement mandates SOS to contact the individuals on the EBU list. *Id.* ¶62, App. 21; R. Doc. 7, at 11; App. 66; R. Doc. 7-1, at 16; App. 103; R. Doc. 7-2, at 20.[4] *See also,* App. 3; R. Doc. 41, at 3.

The Minnesota Legislature authorized SOS to participate in ERIC. Minn. Stat. § 201.13. App. 3; R. Doc. 41, at 3. However, Minn. Stat. § 171.12, subd. 7a, appears to limit the disclosure of private driver data to SOS, in line with DPPA. While § 18 U.S.C. § 2721 provides for *criminal* penalties enforced upon the DPS for misuse of private driver data, a *civil* penalty provision applies to other individuals, and as AGA contended, includes state officials such as SOS, when SOS violates DPPA. 18 U.S.C. § 2724(a). Amend. Compl. ¶¶129–219; App. 32–35; R. Doc. 7, at 22–35.

In this regard, the district court opined that DPPA's civil enforcement provision precludes a civil action against the Secretary Simon and the Director of Elections Maeda. It found that DPPA's definition of "person" as narrowly defined citing § 2724(a). Notably absent is the congressional omission of "state official or state

---

[4] "When a member receives ERIC Data regarding eligible or possibly eligible citizens who are not registered to vote, the Member shall, at a minimum, initiate contact with each and every eligible or possibly eligible citizen and inform them how to register to vote...."

Appellate Case: 24-1410   Page: 19   Date Filed: 03/14/2024 Entry ID: 5373446

officer": "'person' means an individual, organization or entity, but does not include a State or agency thereof.'" App. 5; R. Doc. 41, at 5 quoting 18 U.S.C. § 2725(2). As such, the district court essentially concluded, since it did not expressly state so, that because the "only express mention of State liability" is a *civil* penalty against a state motor vehicle service (department) "'imposed by the Attorney General' for…a policy or practice of substantial noncompliance' with the statute," DPPA insulates individual state officials from prospective injunctive relief regardless of acts contrary to federal law. *Id.*, quoting *Potocnik v. Carlson,* 9 F.Supp.3d 981, 991 n.5 (D. Minn. 2014). App. 5–6, R. Doc. 41, at 5–6. If so, it leaves state officials, other than those within the DPS, to act with impunity and violate the DPPA.

In addition, the district court noted that if the state officials were acting in accordance with Minnesota Statutes § 201.13(d), their entering into an agreement with ERIC cannot be found to be beyond their statutory authority. App. 7; R. Doc. 41, at 7. The court rejected AGA's arguments that DPPA and HAVA preempted the state law and ERIC contract pursuant to the Supremacy Clause. The allegations are based upon violations of federal law, not the state law or ERIC contract, which could be determined preempted under DPPA and HAVA. App. 7–8; R. Doc. 41, at 7–8. The district court concluded the preemption arguments run "afoul of Minnesota's sovereign immunity." *Id.,* at 8.

Based on this legal analysis, the district court both denied AGA's motion for preliminary injunction and granted SOS's motion to dismiss. App. 9–10; R. Doc. 41,

7

at 9–10. AGA disagrees with the district court's decision and seeks reversal of the court's adjudication.

Importantly, ERIC, without the AGA's consent, has shared private driver data with Center for Election Innovation Research (CEIR), yet another non-governmental, private entity. The ERIC agreement acknowledges that the private data in the EBU list is created using private driver data that is protected by DPPA. And, ERIC employees advise that per DPPA "there is a legal requirement to withhold the [EBU] report under federal data protection laws." *See* https://ericstates.org/wp-content/uploads/documents/ERIC_Reports_ Legal%20Protections_and_ Disclosure_Chart.pdf (last visited: Mar. 6, 2024).

Yet, anyway, ERIC shares this private driver data with the Center for Election Innovation Research (CEIR), another private entity with the Secretaries' approval:

> The State uploads the cleaned EBU list to the ERIC SFTP site, and ERIC securely transfers it to CEIR.

Amend. Compl. Ex. 7 at 2; App. 144; R. Doc. 7–7. In fact, once the AGA's private driver data is obtained, ERIC has the authority, whether monthly, periodically, or at any time, to disclose the AGA's private driver data to other private entities such as ERIC's "agents, contractors or subcontractors." (R.Doc. 15, Kaardal Decl., Ex. 1, ERIC Membership Agreement ¶ 4(a); *see also* Ex. 2, ERIC Membership Agreement ¶ 3(b)(i) (similar language referring to "agents, contractors or subcontractors). ERIC, as a private corporation, has never publicized the identities of its "agents, contractors or

Appellate Case: 24-1410     Page: 21     Date Filed: 03/14/2024 Entry ID: 5373446

subcontractors"—including CEIR. No government oversight exists over these ERIC disclosures of private driver data to CEIR and such "agents, contractors and subcontractors." *Id.* The SOS provides indemnification of ERIC if such disclosures lead to DPPA liability. (R.Doc. 15, Kaardal Decl., Ex 1, at 30; Ex. 2, at 23).

Furthermore, 9 states have left ERIC. Since January 2022, Louisiana, Alabama, Florida, Missouri, West Virginia, Iowa, Ohio, Texas and Virginia have withdrawn from ERIC because of concerns about DPPA and HAVA violations. (R.Doc. 15, Kaardal Decl., Ex. 15). According to the withdrawing states, there are many reasons:

- ERIC refuses to remove the obligation for member states to contact the individuals identified on the EBU list.
- ERIC's focus is primarily on voter registration of EBUs who have already declined to register at the state's department of motor vehicles.
- ERIC cannot and does not remove any voters and cannot and does not make any changes to state voter registration data; only state and county election officials can make changes to registration data.
- ERIC provides reports only once or twice a year that states may use to attempt to verify changes in voter files; No state can change a file based solely on reports provided by ERIC.

(R.Doc. 15, Kaardal Decl., Exs. 4-6 (Alabama, Missouri and Florida withdrawals), 15).

Although the 9 states have withdrawn from ERIC, these 9 states are performing the same government function—but, without unlawfully sharing private driver data with ERIC, CEIR or other non-governmental, private parties. *Id.* Essentially, these nine States have proven that ERIC is not required to maintain accurate statewide voter registration lists and is not required to securely share voter registration information with other states to supplement out-of-state-move data

9

obtained from the U.S. Postal Service. *See:* https://www.usps.com/ (last visited: Mar. 13, 2024).

## SUMMARY OF THE ARGUMENT

The lower court's statutory interpretation of DPPA is misplaced. Prospective injunctive relief against individual state officials is available when state officials are connected to DPPA violations. While Congress specifically excluded states and agencies under 18 U.S.C. § 2715(2), Congress did not exclude state officials or state employees, individually; the silence of Congress is controlling where Congress knows how to say something, but chooses not to. *Ela v. Destefano,* 869 F.3d 1198, 1202 (11th Cir. 2017) (citation omitted). Prospective injunctive relief under DPPA falls within the Eleventh Amendment immunity exception recognized by the U.S. Supreme Court in *Ex parte Young.*

HAVA and DPPA preempt SOS's disclosures of private driver data to ERIC because the disclosures are "discriminatory" and "inconsistent" with HAVA's requirements and fail to satisfy DPPA's "government function" or "research" exceptions. The lower court's grant of the motion to dismiss and denial of the motion for preliminary injunction should be reversed. The motion for preliminary injunction should have been granted.

10

# ARGUMENT

## I. The standard of review is de novo.

This Court will review de novo a district court's decision granting a motion to dismiss for failure to state a claim, accepting as true all factual allegations and viewing them in the light most favorable to the non–moving party. *Yang v. Robert Half Intl., Inc.*, 79 F.4th 949, 961–62 (8th Cir. 2023), *reh'g denied*, No. 22-2592, 2023 WL 6313679 (8th Cir. 2023). This Court will generally review the denial of a preliminary injunction for abuse of discretion and reverse "where the district court rests its conclusion on clearly erroneous factual finding or erroneous legal conclusions." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 698–99 (8th Cir. 2021) quoting *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). Further, this Court will review the district court's legal conclusions de novo. *Id.* citing *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013).

## II. The lower court's grant of the motion to dismiss should be reversed.

### A. The terms of § 2724(a) and § 2725(2) unambiguously authorize civil actions against "individuals" such as Simon and Maeda who are "individuals."

The precedents establish that the starting point for statutory interpretation is the statutory text. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98–99 (2003), citing *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254 (1992). And where the words of the statute are unambiguous, the "'judicial inquiry is complete.' " *Id.,* at 254 (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)). Importantly, under DPPA, the general

Appellate Case: 24-1410     Page: 24     Date Filed: 03/14/2024 Entry ID: 5373446

federal rule for private driver data is non-disclosure. *Maracich v. Spears*, 570 U.S. 48, 60-61 (2013).

The terms of 18 U.S.C. § 2724–for "such other preliminary and equitable relief as the court determines to be appropriate"–and of § 2725(2)—defining "person" as "an individual, organization or entity, but does not include a State or agency thereof"—unambiguously authorize lawsuits against "individuals" such as Simon and Maeda who are "individuals" connected to DPPA violations. On its face, the statutory provisions do *not exclude* "individuals" who are state officials or employees connected to DPPA violations from being sued for prospective injunctive relief. Congress enacted a remedial scheme under § 2724(a) and § 2725(2) to ensure that all DPPA-violating individuals, including state officials and employees, are subject to civil action enforcement.

Section 2724(a), by its unambiguous terms, creates a private right of action for individuals to sue DPPA-violating individuals whoever they are. *See, e.g., Orduno v. Pietrzak*, 932 F.3d 710, 717 (8thCir. 2019) (city's police chief is a "person" liable under DPPA for violations). Section 2724 authorizes a civil action for preliminary and equitable relief against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record" in violation of DPPA:

> (a) Cause of action.–A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

(b) Remedies.--The court may award…(4) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724 (emphasis added). And, under § 2725(2), DPPA defines "person" as "an individual, organization or entity, but does not include a State or agency thereof":

(2) "person" means an individual, organization or entity, but does not include a State or agency thereof

18 U.S.C. § 2725 (emphasis added).

The Merriam Webster Dictionary provides the following principal definition for the word "individual":

1a: a particular being or thing as distinguished from a class, species, or collection: such as (1): a single human being as contrasted with a social group or institution a teacher who works with *individuals*

*See* https://www.merriam-webster.com/dictionary/individual#:~:text=(1),as%20 distinguished%20from%20a%20group (last visited: Mar. 5, 2024) (emphasis in original). Under this dictionary definition, Simon and Maeda are each "individuals" because they are each "a single human being as contrasted with a[n] … institution," here, the Secretary of State's office. *Id.* Suing Simon and Maeda, individually, under this definition is in contrast with suing the "State" or the Secretary of State's office as "an agency thereof."

Accordingly, AGA, following this unambiguous text authorizing DPPA lawsuits against "individuals," but not the Secretary of State's office, sued Simon and Maeda as individuals. The first amended complaint states that Simon and Maeda are sued "individually." Amend. Compl. ¶¶24–27, App. 14–15; R. Doc. 7, at 4–5. (R.Doc.

13

7). Paragraph 24 states Simon, "individually, is sued." Paragraph 26 states Maeda, "individually, is sued." *Id.*

AGA, understanding the plain and unambiguous language of DPPA's statutory provisions, did not sue the State of Minnesota, the Secretary of State's Office, or any other state agency. The phrase "a State or agency thereof" is unambiguously narrow, and does not preclude claims for prospective injunctive relief against "individuals" who are state officials or employees connected to DPPA violations.

## B. DPPA's civil-enforcement provisions create a private right of action against "individuals," including DPPA-violating state officials and employees.

The issue is whether DPPA's civil-enforcement provisions includes a private right of action against individual state employees connected to DPPA violations. *See, generally, City of Racho Palos Verdes v. Abrams,* 544 U.S. 113, 119–121(2005). Did Congress intend to create a federal right to sue individual state officials and employees who are connected to DPPA violations? Under § 1983, the U.S. Supreme Court has identified three factors to guide a statutory inquiry as to an "unambiguously conferred right to support a cause of action":

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

14

*Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016) quoting *Blessing v. Freestone*, 520 U.S. 329 (1997) (citations omitted).

As for the first factor, the intent to benefit the plaintiffs, establishing this factor requires a showing that Congress intended to create a class of beneficiaries to which AGA belongs. *See Rancho Palos Verdes,* 544 U.S. at 120; *see also, Gonzaga Univ. v. Doe*, 536 U.S. 273, 281 (2002). The targeted portion of § 2724(a) fits comfortably among statutory provisions found to create individually enforceable rights because of their "'unmistakeable focus on the benefited class.'" *Colon-Marrero,* 813 F.3d at 17, quoting *Gonzaga Univ.* 536 U.S. at 287.

DPPA's civil-enforcement provision, 18 U.S.C. § 2724(a), by its unambiguous terms, creates a private right of action for individuals to sue DPPA-violating individuals. Moreover, the language of 18 U.S.C.§ 2724(a) authorizing actions against any DPPA-violating individuals, unambiguously creates an individual right: "A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter *shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court*." (Emphasis added). The italicized phrase of DPPA "resembles the language of Titles VI and IX of the Civil Rights Act of 1964 which the Supreme Court has highlighted as indicative of Congress's intent to create an individual right: "'No person…shall…be subjected to discrimination.'" *Colon-Marrero,* 813 F.3d at 18, quoting *Gonzaga Univ.*, 536 U.S. at 287 (citations omitted). The terminology used by

15

Congress in DPPA creates the individual right to sue for preliminary injunctive relief against state officials and employees who are connected to DPPA violations.

The remaining factors of the private-rights inquiry are also satisfied. Enforcing the right within an acceptable litigation process is accomplished by a claim for prospective injunctive relief brought by those individuals "who may bring a legal action" against individuals who are state officials or state employees connected to DPPA violations. Such claims for prospective injunctive relief pose no "'strain [on] judicial competence,' as the right is concrete and well-defined." *Colon-Marrero*, 813 F.3d at 20, quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). And, the same private right of action and the same preliminary injunctive relief remedy, raised in this appeal, are already acknowledged as enforceable against local government officials and employees. *See Orduno v. Pietrzak*, 932 F.3d 710, 717 (8th Cir. 2019) (city's police chief is a "person" liable under DPPA for violations). Moreover, the specificity of § 2724(a)'s "directives shields against potentially disparate outcomes, bolstering the conclusion that the language is rights-creating." *Id.* (citation omitted).

Furthermore, the provision's language is couched in mandatory terms, "rather than precatory, terms,' and 'unambiguously impose[s] a binding obligation.'" *Id.* Under § 2724(a), the statutory text imposes a binding obligation of individuals not to violate DPPA: "for a purpose not permitted under this chapter…." The mandate's mandatory terms triggers the private right to commence a federal court lawsuit.

16

Finally, because § 2724(a) creates a private cause of action to sue individuals, an action lies under § 2724(a) against individuals connected to continuing DPPA violations as a mechanism to seek prospective injunctive relief against continuing DPPA violations. Otherwise, there would be no judicial remedy under DPPA against Minnesota's continuing DPPA violations. *Colon-Marrero*, 813 F.3d at 21–22. DPPA's only specific mention of State liability against the State is in the form of a civil penalty "imposed by the Attorney General" for "[a]ny State department of motor vehicles that has a policy or practice of substantial noncompliance" with the statute. § 2723. But, Simon and Maeda are "individuals," not the "State department of motor vehicles." Consequently, § 2723 does not authorize the Attorney General to sue DPPA-violating defendants Simon and Maeda as contemplated under § 2724(a). But, DPPA does authorize AGA the remedial option of suing Simon and Maeda, as individuals, for prospective injunctive relief because Simon and Maeda are connected to continuing DPPA violations.

Analogously, under § 1983, "[f]ar from indicating congressional intent to foreclose a private remedy…these limited enforcement options reflect an intention to leave that door wide-open." *Colon-Marrero,* 813 F.3d at 21. Similarly, DPPA has no text to preclude claims for prospective injunctive relief against state government officials and employees connected to DPPA violations. Congress has expressly left the "door wide-open" to sue DPPA-violating state officials and state employees.

17

Notably, DPPA—unlike 42 U.S.C. § 1983 which lacks a definition of "person"—provides that a "person" suable under DPPA is defined as an "individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725(2). Congress "specifically excluded states and state agencies" under § 2725(2), but, *Congress* did not exclude "state officials" or "state employees" connected to DPPA violations to ensure DPPA was enforceable. *Id.* And, "[w]here Congress knows how to say something but chooses not to, its silence is controlling." *Ela,* 869 F.3d at 1202 (citation omitted).

### C. The lower court mistakenly interpreted DPPA's civil-enforcement provision precluding injunctive relief against state officials and employees.

The lower court's decision mistakenly interpreted DPPA in making two holdings to preclude injunctive relief. First, the lower court held that AGA's DPPA official capacity claims—which are analogous to *Ex parte Young* § 1983 claims for prospective injunctive relief—failed. App. 5–6; R. Doc. 41, at 5–6. Second, the lower court held that AGA's DPPA individual-capacity claims failed principally relying on Minnesota's sovereign immunity under the Eleventh Amendment, but ironically citing *Ex parte Young.* App. 6–9; R. Doc., at 6–9. As a result of the lower court's analysis, the lower court denied AGA's preliminary injunction motion. App. 9–10; R. Doc., at 9–10.

AGA's challenge to the district court's statutory interpretation of DPPA begins with the Supremacy Clause. The Supremacy Clause renders Congressionally-enacted

laws supreme preempting inconsistent state laws. U.S. Const., Art. VI, ¶ 2. In practice, it is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to" federal law. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 712–713 (1985). Similarly, the Elections Clause provides that Congressionally-enacted law preempt state laws regulating times, places and manner of elections. U.S. Const., Art., § 4, Cl. 1.

Accordingly, the Supreme Court has adjudicated that DPPA regulates interstate commerce and does not violate principles of federalism. In *Reno v. Condon,* 528 U.S. 141, 151 (2000), the Supreme Court concluded, "The personal, identifying information that DPPA regulates is a 'thin[g] in interstate commerce,' and the sale or release of that information in interstate commerce is therefore a proper subject of congressional regulation." *Id.,* quoting, *United States v. Lopez,* 514 U.S. 549, 558-559 (1995).

"The question of whether state law has been preempted by federal law requires an examination of congressional intent—being mindful of the presumption against preemption." *Botz v. Omni Air Intern.*, 134 F. Supp. 2d 1042, 1044–45 (D. Minn. 2001), *aff'd*, 286 F.3d 488 (8th Cir. 2002) citing *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299 (1988); *see also Wellons v. Northwest Airlines, Inc.,* 165 F.3d 493, 495 (6th Cir. 1999). "'Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its

structure and purpose.'" *Id.* quoting *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 152–53 (1982) (internal quotations omitted).

Under 18 U.S.C. § 2723, there is an express preemption provision regarding suing state motor vehicle departments. Only the Attorney General can sue that state *agency*. But, the Office of the Secretary of State and its officials and employees are not mentioned in § 2723.

And, there is express preemption under § 2721(a) requiring non-disclosure of private driver data. Under § 2721(b), there is a list of "permissible uses" of private driver data, which means that if a SOS disclosure is not within the "permissible uses," the SOS disclosure is impermissible, and, therefore, preempted. *See* Amend. Compl. ¶132, App. 33; R. Doc. 7, at 23. None of the permissible exemptions listed under 18 U.S.C. §§ 2721(b) (1–14) authorizes SOS's disclosures to ERIC for voter-registration-related uses. *E.g.,* Amend. Compl. ¶¶ 133, 137–139, *id.*

Again, the general federal rule for private driver data is non-disclosure. *Maracich*, 570 U.S. at 60-61. The Seventh Circuit en banc decision in *Senne v. Village of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) is instructive. The Court stated that each exception to DPPA must be read "with an eye toward its contribution to the 'overall statutory scheme,'" and that the applicability of a particular exception does not automatically mean that all personal information may be released under that exception. *Id.* at 605. Notably, the court ruled that the phrase "for use" at the beginning of each of the exceptions required an analysis of whether inclusion of the

20

personal information is compatible with the exception and whether the amount and type of the personal information disclosed exceeds the scope of the exception. *Id.* at 605-606.

Minnesota Statutes § 201.13, subd. 3(d) allowed SOS to enter into an agreement with ERIC to disclose private driver data for voter-registration-related uses, and Simon and Meada took actions, individually, to implement it. Everything Simon and Maeda did to implement Minnesota Statute § 201.13, subd. 3(d) and the ERIC contract violated DPPA, even though Minnesota Statutes § 201.13, subd. 3(d) and the ERIC contract thereunder authorized it. Because of this conflict between DPPA and Minnesota Statutes § 201.13, subd. 3(d) and the ERIC contract, DPPA preempts Minn. Stat. § 201.13, subd. 3(d) and the ERIC contract. "State law that conflicts with federal law has no effect." *Jones v. Vilsack,* 272 F.3d 1030, 1033 (8th Cir.2001) (citing *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)).

So, Simon's and Maeda's defense to DPPA violations that they are complying with state law and contract is unpersuasive because the same state law and contract cited by Simon and Maeda are preempted by DPPA. Simon and Maeda may argue that they did not take any action contrary to state law because Minnesota Statutes § 201.13, subd. 3(d) allowed Simon to enter into the ERIC agreement in the first instance. Defs. Memo. to Dismiss 14–16. But, the state law and ERIC contract are preempted because the state law and ERIC contract authorize DPPA-violating disclosures of private driver data to ERIC for voter-registration-related uses:

Appellate Case: 24-1410      Page: 34      Date Filed: 03/14/2024 Entry ID: 5373446

> If required by such an agreement, the secretary of state may share the following data from the statewide voter registration system and data released to the secretary of state under section 171.12, subdivision 7a:[5]
> (1) name;
> (2) date of birth;
> (3) address;
> (4) driver's license or state identification card number;
> (5) the last four digits of an individual's Social Security number; and
> (6) the date that an individual's record was last updated.

Minn. Stat. § 201.13, subd. 3(d).

To the contrary, DPPA expressly protects such "personal information" and "highly restricted information" from SOS's disclosure to ERIC or any other private entity or person. DPPA protects such personal information defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the five-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). And, DPPA protects such "highly restricted personal information" defined as "an individual's photograph or image, social security number, medical or disability information[.]" *Id.* § 2725(4). The state law and the ERIC contract thereunder violate DPPA's protections of personal information and highly restricted information.

The district court erred in relying upon *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 107 (1984) as an exception to *Ex parte Young*'s exception to

---

[5] Minnesota Statues § 171.12, subd. 7a mandates disclosure to the Secretary of State.

Appellate Case: 24-1410    Page: 35    Date Filed: 03/14/2024 Entry ID: 5373446

state sovereign immunity. App. 6–7, R. Doc. 41, at 6–7. *See also, Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020) (referring to the *Pennhurst* doctrine as an exception to *Ex parte Young*). The justification for *Ex parte Young* is that a state official who acts in contravention of the federal Constitution or federal law is "stripped of his official or representative character"—the individual cannot be acting lawfully on behalf of the state when he or she acts unconstitutionally or in violation of federal law such as, DPPA. *Ex parte Young*, 209 U.S. at 160. *Ex parte Young* serves to "permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex parte Young*, 209 U.S. at 160).[6]

In other words, an individual capacity claim is one where "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Individual capacity suits seek to impose only personal liability upon a government official, meaning the remedy in a successful individual capacity claim does not extend to the official's office. *See Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985). This "means an individual capacity suit targets the individual behavior of an official . . . as he carries out his state duties." *Attwood v Clemons,* 818 F. App'x 863, 872 (11th Cir.

---

[6] That justification does not hold, however, when a litigant claims that a state official violated state law, because enjoining the state official on this basis would not "vindicate the supreme authority of federal law." *Pennhurst,* 465 U.S. at 106. Hence, enjoining a state official for violating state law would not be preserving federal sovereignty. *Id.*

Appellate Case: 24-1410    Page: 36    Date Filed: 03/14/2024 Entry ID: 5373446

2020) (Grant, J., concurring)." Simon's and Maeda's continuing implementation of state law and the ERIC contract, which are preempted by DPPA, and violate DPPA, makes them liable under DPPA for prospective injunctive relief.

To be sure, similar to a claim for prospective injunctive relief made under the *Ex parte Young* exception to Eleventh Amendment immunity, a DPPA claim for prospective injunctive relief is limited because it applies only if the state officials being sued have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). Such a connection exists "[s]o long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights," *McDaniel v. Presythe*, 897 F.3d 946, 952 (8th Cir. 2018), which is an inquiry similar to the standing one. *See Duit Constr. Co. v. Bennett*, 796 F.3d 938, 940 (8th Cir. 2015); *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023). AGA's first amended complaint alleges that Simon and Maeda are connected to the ongoing, unlawful disclosure AGA's private driver data to ERIC.

Indeed, the Eleventh Amendment "protects States and their arms and instrumentalities from suit in federal court." *Webb v. City of Maplewood,* 889 F.3d 483, 485 (8th Cir. 2018). But, as with the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123 (1908), "a private party may sue state officials in their official capacities for prospective injunctive relief." A similar claim for prospective injunctive relief is authorized by DPPA. *McDaniel v. Precythe,* 897 F.3d 946, 951–52 (8th Cir. 2018).

24

The lower court's decision erroneously relied on the analysis found in a footnote in *Potocnik v. Carlson*, 9 F.Supp.3d 981, 991 n.5 (D. Minn., 2014). *Potocnik* erroneously assumed that DPPA has a detailed and *complete* remedial scheme. But, 18 U.S.C. § 2723 authorized a legal action against only one *state* agency—a state motor vehicle department—as an exception to DPPA's civil enforcement provision excluding the "State or state agencies thereof" from legal action. *See* 18 U.S.C. § 2725(2). Allowing the Attorney General to sue a single state agency is not a complete remedial scheme against DPPA violations.

What has been demonstrated by AGA is that the SOS is violating DPPA. Under 18 U.S.C. § 2723, the Attorney General can sue the state motor vehicle department. But, the SOS is not the state motor vehicle department. Because of this difference, the remedial scheme enforcing DPPA is incomplete without Congress authorizing private civil actions against SOS for prospective injunctive relief. In this way, Congress's DPPA civil-enforcement scheme is analogous to § 1983 *Ex parte Young* claims for prospective relief against state officials and state employees violating federal law.

In this appeal, AGA claims that Simon and Maeda implemented actions under state law and ERIC contract which violate DPPA. Maeda, as Elections Director for Minnesota, not only sits on the ERIC Board of Directors,[7] but is also responsible for

---

[7] *See,* https://ericstates.org/who-we-are/(last visited Jan. 16, 2024). Maeda also services as ERIC's Secretary on the Board.

Appellate Case: 24-1410     Page: 38     Date Filed: 03/14/2024 Entry ID: 5373446

implementing Simon's direction to obey the terms of the ERIC contract. *See e.g.,* Amend. Compl. Ex. 1; ¶¶ 72, 106, 120, 121, 175, App. 48–80, R. Doc. 7–1; App. 23, 28, 31, 40; R. Doc. 7, at 13, 18, 21, 29.

The state statutory provision under Minn. Stat. § 201.13, subd. 3(d) actually identifies *how* the implementation of state policies to "maintain voter registration records" works: "[i]f…the secretary of state *enters an agreement to share information or data with an organization governed exclusively by a group of states….*" (Emphasis added). The Legislature, possibly not knowing the contract terms between SOS and ERIC, still managed to enact a state law preempted by DPPA—the state law authorizes the disclosure of private driver data to ERIC in violation of DPPA. Minn. Stat. § 201.13, subd. 3(d). Meanwhile, SOS would have known that the state law was being amended to conform to the ERIC contract's unlawful disclosure of private driver data to ERIC for voter-registration-related uses. In this way, SOS knowingly violated the DPPA.

The district court also erred by claiming that the individual capacity claims were barred by "Minnesota's sovereign immunity" under the Eleventh Amendment. App. 6–9; R. Doc. 41, at 6–9. First, the district court failed to recognize that AGA asserted that DPPA's civil-enforcement provisions authorize the private cause of action to sue state employees for prospective injunctive relief enjoining continuing violations of DPPA. Congress intended DPPA's civil-enforcement provisions to work like § 1983 claims for prospective injunctive relief against state officials under the *Ex parte Young* doctrine.

26

To be sure, based on Eleventh Amendment principles, a federal court lacks jurisdiction to enjoin a state official's actions on the basis that the official has violated *state law. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Bacon v. Neer*, 631 F.3d 875, 880 (8th Cir. 2011). Here, AGA is not alleging that Simon and Maeda violated a state law. Thus, *Pennhurst* is a limitation on *Ex parte Young*'s exception to state sovereign immunity because it requires a federal law, not state law, violation. *Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020) (referring to the *Pennhurst* doctrine as an exception to *Ex parte Young*). However, the *Pennhurst* precedent doesn't apply; AGA claims are based on violations of DPPA, *a federal law,* not a state law. The justification for the *Ex parte Young* exception is that a state official who acts in contravention of federal law is "stripped of his official or representative character. *Ex parte Young*, 209 U.S. at 159-160. *Ex parte Young* serves to "permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex parte Young*, 209 U.S. at 160).

In other words, an individual capacity claim is one where "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Individual capacity suits seek to impose only personal liability upon a government official, meaning the remedy in a successful individual capacity claim does not extend to the official's office. *See Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985). This "means an individual capacity suit targets the individual behavior of an official . . . as

27

he carries out his state duties." *Attwood v Clemons,* 818 F. App'x 863, 872 (11th Cir. 2020) (Grant, J., concurring)."

Here, AGA argues that because DPPA invalidates the state law and invalidates the ERIC contract thereunder, Simon's and Maeda's implementation of both violate DPPA. Maeda, as Elections Director for Minnesota, not only sits on the ERIC Board of Directors,[8] but is also responsible for implementing Simon's directions to obey the terms of the ERIC contract. *See e.g.,* Amend. Compl. Ex. 1; ¶¶ 72, 106, 120, 121, 175, App. 48–80, R. Doc. 7–1; App. 23, 28, 31, 40; R. Doc. 7, at 13, 18, 21, 29. And, because Simon and Maeda are state officials who have acted in contravention of federal law, each of them is "stripped of his official or representative character." *Ex parte Young,* 209 U.S. at 160.

AGA's allegations in its first amended complaint references the disclosures of non-registered voters' private driver data, who are not in the statewide voter registration system. *See e.g.,* Amend. Compl. ¶¶119–122, App. 31–32; R. Doc. 7, at 21–22. As previously explained, the doctrine of preemption is derived from the Supremacy Clause. 18 U.S.C. § 2721(a) expressly preempts general disclosure of private driver data. Under § 2721(b), there is a list of "permissible uses" of private driver data; and, if an action is not within "permissible uses," it is impermissible under § 2721(a) and, hence, preempted. *See* Amend. Compl. ¶132, App. 33, R. Doc. 7, at 23.

---

[8] *See,* https://ericstates.org/who-we-are/(last visited Jan. 16, 2024). Maeda also services as ERIC's Secretary on the Board.

Appellate Case: 24-1410     Page: 41     Date Filed: 03/14/2024 Entry ID: 5373446

None of the permissible exemptions under 18 U.S.C. §§ 2721(b) (1–14) exempts Simon's and Maeda's disclosures from DPPA's non-disclosure mandate for private driver data. *E.g.,* Amend. Compl. ¶¶133, 137–139, App. 33, R. Doc. 7, at 23.

Second, the district court also argues that Congress could not authorize private causes of action seeking prospective injunctive relief against individual state officials and employees. Again, the rationale is misplaced. Congress has done just that with § 1983 claims for prospective injunctive relief against state officials. The same is true under DPPA. 18 U.S.C. § 2724(a) and § 2725(2), read together, authorize private causes of action for prospective injunctive relief against state officials and employees, individually, who are connected with continuing violations of DPPA.

## III.    Preliminary injunctive relief is justified.

If the district court decision granting the motion to dismiss is reversed, preliminary injunctive relief should have been granted and the court's decision denying it should also be reversed. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 112 (8th Cir. 1981) (en banc).

### A.    AGA is likely to succeed on the merits.

AGA is likely to succeed on the merits because Simon and Maeda are disclosing private driver data to ERIC in violation of DPPA and HAVA. 18 U.S. Code § 2721.

Appellate Case: 24-1410    Page: 42    Date Filed: 03/14/2024 Entry ID: 5373446

1. **DPPA's rule is non-disclosure of private driver data with no exception for voter-registration-related uses.**

DPPA is essential for protecting individuals from potential abuses such as identity theft, stalking, and harassment that could result from the unauthorized disclosure of their private driver data. Moreover, DPPA helps to uphold individuals' privacy rights and fosters trust between citizens and government agencies.

Under DPPA, 18 U.S.C. § 2721(a), the general rule for private driver data is non-disclosure. *Maracich*, 570 U.S. at 60-61. However, there are multiple exceptions for which disclosure of driver's license information *is permitted*. *See* 18 U.S.C. § 2721(b)(1)-(14) (emphasis added). *Id.* These exceptions generally relate to various governmental and business purposes, such as "use by any government agency, including any court or law enforcement agency, in carrying out its functions," as well as provisions relating to the resale and disclosure of information by authorized recipients for permitted uses. *See* 18 U.S.C. § 2721(b) and (c).

Significantly, none of DPPA exceptions express the use of private driver data for the uses SOS's counsel stated at oral argument: "information sharing," "error checking," and "voter registration activities." Transc. 7: 16-18; 26:20-27:1. R. Doc. 44. And, DPPA exceptions are to be interpreted narrowly so as not to swallow DPPA's rule of non-disclosure of private driver data. The U.S. Supreme Court in *Maracich*, 570 U.S. at 60–61, interpreting DPPA's exceptions, highlighted that a court's interpretation of an exception must be made within the framework and design of the

30

statute. For example, an exception under § 2721(b)(12), must be read consistently with "both DPPA's general prohibition against disclosure of 'personal information' and its ban on release of 'highly restricted personal information.' §§ 2721(a)(1)-(2)." 570 U.S. at 60. "An exception to a 'general statement of policy' is 'usually read... narrowly in order to preserve the primary operation of the provision.'" *Id.,* quoting *Commissioner v. Clark,* 489 U.S. 726, 739 (1989).

## 2. HAVA preemption applies because SOS's disclosure of private driver data exclusively to the Delaware corporation ERIC for voter-registration-related uses is "discriminatory" and "inconsistent" with HAVA's requirements.

### (1) The Supremacy Clause means state laws and contracts inconsistent with federal laws are preempted.

The Supremacy Clause provides a rule of decision for determining whether federal or state law applies in a particular situation. *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020). "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 108 (1992) (internal quotation marks omitted)). "And where the federal government, in the exercise of its superior authority …has enacted a complete scheme of regulation and has therein provided a standard … states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or auxiliary regulations." *Hines v. Davidowitz,* 312 U.S. 52, 66–67 (U.S. 1941)

31

**(2) HAVA's § 21084 is an express preemption provision preempting state "election technology and administration requirements" which are "inconsistent" with federal election laws.**

Pursuant to the U.S. Constitution's Elections Clause, Congress enacted HAVA, with an express preemption provision, preempting state "election technology and administration requirements" "inconsistent" with federal election laws. 52 U.S. Code § 21084 expressly preempts states from having election "technology and administration requirements" which are "inconsistent" with federal requirements:

> The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title.

Pub. L. 107–252, title III, § 304, Oct. 29, 2002, 116 Stat. 1714. The reference in the block quote above to "this subchapter" in the last sentence is to HAVA, including 52 U.S. Code § 21083(5)(B)(i).

**(3) SOS's disclosures of private driver data exclusively to ERIC are preempted by 52 U.S.C. § 21083(a)(1)(A), which requires that the State implement the statewide voter registration system and list in a non-discriminatory manner.**

HAVA's 52 U.S.C. § 21083(a)(1)(A), requires that the State implement the statewide voter registration system and list (SVRS) in a uniform and non-discriminatory manner:

> [E]ach State, acting through the chief State election official, shall implement, in a uniform and **nondiscriminatory manner**, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State (in this subsection referred to as the "computerized list")…

(Emphasis added). Because SOS, as the chief State election official for the state, is disclosing private driver data exclusively to Delaware corporation ERIC for voter-registration-related uses, and no one else, SOS is violating HAVA's non-discriminatory requirement.

States discriminate when they "pick and choose among groups" to dole out important election-related privileges. The U.S. Court of Appeals decision in *Obama for America v. Husted*, 697 F.3d 423, 435–36 (6th Cir. 2012) stands for the proposition that states are not permitted to pick and choose among groups for special election-related privileges:

> Equally worrisome would be the result if states were permitted to pick and choose among groups of similarly situated voters to dole out special voting privileges. Partisan state legislatures could give extra early voting time to groups that traditionally support the party in power and impose corresponding burdens on the other party's core constituents.

697 F.3d at 435–36 (citation omitted). "[P]articularly where [voting restrictions] have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition." *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., concurring).

33

Similarly, it is "equally worrisome" that SOS is picking and choosing a Delaware corporation ERIC, among others, for special election-related privileges. The known special privileges provided to ERIC include obtaining the private driver data, analyzing the data, learning from the data analysis and sharing the information with others such as CEIR. SOS is not providing the same special privileges to similarly situated parties such as AGA.

A natural reading of 52 U.S.C. § 21083 supports that SOS's ERIC-only private driver data disclosures violate HAVA's non-discriminatory requirement. The question presented concerns the meaning of 52 U.S.C. § 21083(a)(1)(A) and in interpreting that provision, "[w]e begin 'where all such inquiries must begin: with the language of the statute itself.'" *Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)). In this context, the most natural reading of HAVA's non-discrimination requirement is that the State and its chief election official are legally prohibited from favoring any party with private driver data for voter-registration-related uses. See, *e.g., United States v. Hohri*, 482 U.S. 64, 69–71 (1987) (choosing the "more natural" reading of a statute); *ICC v. Texas*, 479 U.S. 450, 456–457 (1987) (same); see also *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 41 (2008) (similar).

First, to assist in the natural reading of 52 U.S.C. § 21083(a)(1)(A), the relevant dictionary definitions of "State," "implement," "uniform" and "nondiscriminatory" are provided below:

34

> State: "a politically organized body of people usually occupying a definite territory especially : one that is sovereign"
> Implement: "carry out; accomplish; to give practical effect to and ensure actual fulfillment by concrete measures"
> List: "an official roster: Roll"
> Uniform: "having always the same form, manner, or degree: not varying or variable-uniform procedures"
> Nondiscriminatory: "not discriminatory: fair, equitable"

See https://www.merriam-webster.com/(last visited on Feb. 21, 2024). Additionally, synonyms of "nondiscriminatory" include: "neutral, impartial, unbiased, objective, equitable, unprejudiced, uncolored, equal, fair, just." *Id.*

Second, when using these dictionary definitions for 52 U.S.C. § 21083(a)(1)(A), the natural meaning for the whole text is "the state government should give practical effect to the statewide voter registration system and list by using the same, non-discriminatory procedures for everyone." And, SOS's targeted disclosures of private driver data to ERIC are not "nondiscriminatory, neutral, impartial, unbiased, objective, equitable, unprejudiced, uncolored, equal, fair, just" because SOS does not make the same information available to similarly situated groups or corporations.

In fact, Minnesota law codifies SOS's discriminatory favoritism towards ERIC. The Minnesota Supreme Court has interpreted state law, including the state's government data practices law (Minn. Stat. § 13.01, et seq.) to deem much of the SVRS and list non-public, except SOS may choose to share the non-public information with anyone SOS chooses—including ERIC:

> It is true that, under [Minn. Stat. § 201.091] subdivision 4, "[t]he secretary of state *may* provide copies of ... other information from the statewide

registration system for uses related to elections, political activities, or in response to a law enforcement inquiry from a public official concerning a failure to comply with any criminal statute or any state or local tax statute." (Emphasis added.)…In this instance, the Secretary chose not to invoke that permissive authority…Based on his request, Cilek had access to—and received—all of the data to which he, as a Minnesota voter, was entitled as a matter of law.

*Cilek v. Office of Minnesota Secretary of State*, 941 N.W.2d 411, 416-417 (Minn. 2020). So, according to the Minnesota Supreme Court, Minnesota voters like Cilek and AGA are only entitled to limited SVRS information. Consequently, it must be "discriminatory" under HAVA—and an "abuse of discretion" under Minnesota law—for SOS to exclusively share the private driver data with Delaware corporation ERIC, and no one else, for SVRS and list purposes.

Additionally, the public-private relationship of SOS and ERIC under the ERIC contract cannot be excused because of a benign motive. The U.S. Supreme Court in *Ferguson v. City of Charleston*, 532 U.S. 67 (2001) held that public-private partnerships can violate federal law and that benign motives do not excuse governmental illegalities:

As respondents have repeatedly insisted, their motive was benign rather than punitive. Such a motive, however, cannot justify a departure from Fourth Amendment protections, given the pervasive involvement of law enforcement with the development and application of the MUSC policy.

*Ferguson*, 532 U.S. at 85.

Similarly, in this case, there is no doubt that SOS's and ERIC's expressed benign motive is to encourage registration and voting. But, SOS is doing so in a

36

discriminatory way by SOS exclusively disclosing the private driver data to ERIC, but no one else. According to *Ferguson*, no matter how benign the motive, it does not justify SOS's violation of HAVA's non-discriminatory requirement.

**(4)    Preemption applies because SOS's disclosure of private driver data to ERIC for voter-registration-related uses is inconsistent with HAVA's prohibition on state-sponsored voter registration drives.**

Minnesota Statutes § 201.13(d) and the ERIC contract are preempted under 52 U.S. Code § 21084 because they are "election technology and administration requirements" "inconsistent" with federal election laws, specifically 52 U.S. Code § 21083. Federal election law is premised on voter registration activities and EBU identification, listing and mailers being a private function within states, not a state's government function. And, federal campaign finance laws are premised on voter registration drives being conducted by private parties, not the government. *See* 11 C.F.R. § 100.133.

In this case, SOS is engaging in a government-sponsored voter registration drives: the ERIC contract, approved and implemented by SOS to disclose private driver data to ERIC, for ERIC to use to identify eligible, but unregistered persons (EBU) and put them on a list (EBU list), and for SOS to send each person on the EBU list a postcard mailer to register to vote. Amend. Compl. Ex. 1(Ex. A, ¶5), App. 77–78; R. Doc. 7–1, at 30–31; *id.* Ex. 16, R. Doc. 15–16, at 1–56. (EBU mailer postcard and invoices for postage since 2019)). So, the ERIC contract requires SOS to

37

disclose the state's private driver data to ERIC, for a government-sponsored voter registration drive. *See e.g.,* Amend. Compl. Ex. 1(Ex. A, ¶2), App. 75–76, R. Doc. 7–1, at 28–29. The contract's purpose is to use the state's private driver data to identify potentially eligible but unregistered persons (EBUs), create EBU lists, and to send EBU mailers. Honey Decl. ¶31, App. 372; R. Doc. 16, at 11. And, the ERIC contract provides:

> When the Member receives Data from ERIC regarding eligible or possibly eligible citizens who are not registered to vote, the Member shall, at a minimum, initiate contact with each and every eligible or possibly eligible citizen and inform them how to register to vote…

Amend. Comp. Ex. 2 (Ex. A, ¶4.a.), App. 103, R. Doc. 7–2, at 23.

ERIC explicitly prohibits states from disclosing any portion of the EBU with any other private entity or person. Honey Decl. ¶35, App. 374–375, R. Doc. 16, at 13–14. However, ERIC, the private organization, ERIC's contractors, subcontractor and agents and whomever ERIC and the defendants give the information, like CEIR, have access to this information about people who decline to register at DPS. *Id.*

The EBU mailer postcard sent out by SOS is part of a voter registration drive, not a voter education program. Kaardal Decl. Ex. 16, R. Doc. 15-16, at 1–5. The postcard declares, "Register to Vote." *Id.* Since May of 2019, SOS has spent tens of thousands of dollars for postage on EBU mailer postcards. *Id.,* 5–56 (SOS invoices, May 9, 2019 through October 31, 2023).

According to a dictionary definition of "voter registration drive," it is "the distribution and collection of voter registration applications by two or more persons for delivery to a county clerk and recorder." (https://www.lawinsider.com /dictionary/voter-registration-drive). Under this definition of "voter registration drive," the ERIC contract constitutes a government-sponsored voter registration drive: identifying EBUs, creating EBU lists, and sending targeted EBU mailers. Honey Decl. ¶36, App. 375; R. Doc. 16, at 14.

ERIC agrees. In a 2018 statement by ERIC founder and then ERIC board member, David Becker, claims, "ERIC is the single most effective voter registration drive in the history of the United States." Honey Decl. ¶42, App. 376; R. Doc. 16, at 15. David Becker also disclosed in 2011 that they had conducted research and were able to determine that the EBUs that ERIC would target for voter registration drives would be "disproportionately" demographic groups that are typically targeted by Democrat campaigns and progressive non-profits. Honey Decl. ¶43, App. 376; R. Doc. 16, at 15.*).*

ERIC contract's EBU voter registration drive is preempted under 52 U.S. Code § 21084 because it is an "inconsistent" "election technology and administration requirement." It is important to note that the U.S. Election Assistance Commission has opined on a similar question, under a code section different than 52 U.S.C. § 21083, that use of HAVA funds for government-sponsored voter registration drives is inconsistent with HAVA. In 2008, the U.S. Election Assistance Commission issued an

Appellate Case: 24-1410     Page: 52     Date Filed: 03/14/2024 Entry ID: 5373446

advisory opinion that state election officials are prohibited from using federal funds to conduct "voter registration drives" because they are inconsistent with HAVA:

> 3. Neither Section 101 nor 251 funds may be used to conduct voter registration drives or get out the vote efforts; including advertising for the event, setting up booths, and paying salaries of employees who register new voters.
> 4. HAVA authorizes the use of Section 101 funds to educate voters about registering to vote. However, as note in response to question 2, neither Section 101 nor 251 funds can be used for "get out the vote" activities.

U.S. Election Assistance Commission Funding Advisory Opinion FAO-08-005.

Amend. Compl. Ex. 8; App. 148, R. Doc. 7–8, at 2.

This advisory opinion was based on 52 U.S.C. § 20901(b)(1)(C) limiting use of HAVA funds to educating voters, not voter registration drives and get out the vote activities:

> A State shall use the funds provided under a payment made under this section to carry out one or more of the following activities: …
>
> (C) Educating voters concerning voting procedures, voting rights, and voting technology.

*Id.* Since fiscal year 2006, Office of Inspector General (OIG) audits of HAVA grants have resulted in 19 recommendations and just over $1 million dollars in questioned costs related to government-sponsored voter registration drives and GOTV activities. Kaardal Decl., Ex. 17, R. Doc. 17, at 1–9.

The reason why HAVA funds can't be used is HAVA preempts government-sponsored voter registration drives and get-out-the-vote activities. 52 U.S.C. §

Appellate Case: 24-1410    Page: 53    Date Filed: 03/14/2024 Entry ID: 5373446

20901(b)(1)(C). Similarly, SOS's government-sponsored voter registration drives for EBU's, coordinated with ERIC, are preempted by HAVA. 52 U.S.C. § 21083 (a)(1)(A).

**(5) Both DPPA and HAVA protect the privacy of private driver data and preempt Minnesota Statutes § 201.13(d) and SOS-ERIC contract authorizing SOS to disclose private driver data to ERIC for voter-registration-related uses.**

Consistent with DPPA, under HAVA's § 21083(5)(B)(i), SOS is not legally authorized to disclose private driver data to private parties for voter-registration-related uses. 18 U.S.C. § 2721 and 52 U.S.C. § 21083(5)(B)(i) preempt any state law or contract which authorizes SOS to disclose private driver data to a non-governmental, private party for voter-registration-related uses.

As already mentioned, the starting point for statutory interpretation is the statutory text. *Desert Palace, Inc.*, 539 U.S. at 98–99, citing *Connecticut Nat. Bank,* 503 U.S. at 253–254. Generally, courts try to construe statutes on the same subject harmoniously, and, if possible, give effect to every provision in both. 2B Sutherland Statutory Construction (7th ed.) § 51:2, Statutes on the same subject construed together (footnotes omitted). But, if the two statutes are deemed irreconcilable, typically, the later, specific statute controls over the earlier, general statute. *Id.*

The two federal laws at issue are DPPA and HAVA. DPPA was enacted in 1994. HAVA was enacted in 2002. Both DPPA and HAVA unambiguously protect the privacy of private driver data. DPPA provision at issue is 18 U.S.C. § 2721 which

41

has two relevant parts protecting privacy of private driver data. 18 U.S.C. § 2721(a) states that private driver data shall not be disclosed:

> (a)In General.—A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:…(1) personal information…; or (2) …highly restricted personal information…

Then, § 2721(b) authorizes narrowly-drawn exceptions to 2721(a)'s rule of non-disclosure of private driver data. But, § 2721(b) does not include an exception for voter-registration-related uses which are the "uses" at issue in this appeal.

HAVA provision, 52 U.S.C. § 21083(5)(B)(i), also protects the privacy of private driver data. 52 U.S.C. § 21083(5)(B)(i) applies whenever SOS obtains private driver data from the State department of motor vehicles for voter-registration-related uses. Specifically, § 21083(5)(B)(i) requires that such disclosures be subject to a written agreement limiting the voter-registration-related uses of the private driver data—"to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration":

> (B) Requirements for State officials
> (i) Sharing information in databases
>     The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

42

52 U.S.C. § 21083(5)(B)(i) is a later, more specific, and more limiting law on SOS beyond 18 U.S.C. § 2721's privacy protections. 52 U.S.C. § 21083(5)(B)(i) is later than 18 U.S.C. § 2721 because HAVA was enacted in 2002 and DPPA was enacted in 1994. 52 U.S.C. § 21083(5)(B)(i) is more specific than 18 U.S.C. § 2721 because 52 U.S.C. § 21083(5)(B)(i) protects private driver data privacy applicable to SOS's voter-registration-related uses while 18 U.S.C. § 2721 does not even mention SOS's voter-registration-related uses of private driver data.

And, 52 U.S.C. § 21083(5)(B)(i) is more limiting than 18 U.S.C. § 2721. HAVA goes beyond DPPA's privacy protections and specifically regulates SOS as it relates to voter-registration-related uses of private driver data. SOS, as it relates to private driver data, is limited by § 21083(5)(B)(i) in the following ways: (1) use of private driver data only pursuant to an agreement between the chief State election officials and the official responsible for the State motor vehicle authority of a state; (2) use of private driver data only "to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority" and (3) use of private driver data only "to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration." *Id.*

SOS's disclosures of private driver data to ERIC for voter-registration-related uses violate the limitations of § 21083(5)(B)(i) because such uses are legally

43

unauthorized under § 21083(5)(B)(i). First, Minnesota Statutes § 201.13(d) authorizes such disclosures to ERIC:

> If, in order to maintain voter registration records, the secretary of state enters an agreement to share information or data with an organization governed exclusively by a group of states, the secretary must first determine that the data security protocols are sufficient to safeguard the information or data shared. If required by such an agreement, the secretary of state may share the following data from the statewide voter registration system and data released to the secretary of state under section 171.12, subdivision 7a:
> (1) name;
> (2) date of birth;
> (3) address;
> (4) driver's license or state identification card number;
> (5) the last four digits of an individual's Social Security number; and
> (6) the date that an individual's record was last updated.

Minn. Stat. § 201.13(d).[9] Second, SOS-ERIC agreement under Minnesota Statutes § 201.13(d) authorizes such disclosures to ERIC.

But, under § 21083(5)(B)(i), SOS can only use the private driver data to do its own "match" and only to the extent required to verify the accuracy of the voter registration application information. So, SOS's disclosures to ERIC, whether authorized by Minnesota Statutes § 201.13(d) or SOS-ERIC agreement, violate § 21083(5)(B)(i). Therefore, Minnesota Statutes § 201.13(d) and SOS-ERIC agreement are preempted by § 21083(5)(B)(i).

---

[9] Minnesota Statutes § 171.12, subd. 7a, provides, "The commissioner [of public safety] shall disclose personal information to the secretary of state for the purpose of increasing voter registration and improving the accuracy of voter registration records in the statewide voter registration system."

44

### 3. DPPA's "government function" exception does not apply to the ERIC agreement.

SOS unpersuasively argues that the ERIC agreement falls within DPPA's "government function" exception. DPPA's "government function" exception, authorizes, in relevant part, disclosure of private driver data:

> For use by … any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

18 U.S.C. § 2721(b)(1).

For this exception to apply, there are two separate conditions that must be met. First, ERIC must be acting on behalf of a government agency. Second, the data must be used to perform SOS's function. Neither of these conditions are met.

### (1) SOS's argument for DPPA "government function" exception is not supported by the facts.

SOS argued before the district court that the ERIC agreement creates a "government function" of "sharing information." Transcr. 7: 16-18, R. Doc. 44. SOS's DPPA "government function" exception argument for "sharing information" is unpersuasive because the disclosure to ERIC fails on both the "acting on behalf of" and on the "government function" component of DPPA's § 2721(b)(1) exception. Although the ERIC agreement creates a contractual duty for SOS to disclose private driver data to ERIC—i.e., "information sharing"—the ERIC agreement does not create a "government function" of "information sharing" because such government

45

function did not exist prior to the agreement and would not exist if the ERIC agreement were terminated. *Id.*

**(2)** **ERIC is not performing a government function because the agreement specifically states that ERIC is not an agent, fiduciary, partner, nor joint venturer of SOS.**

The ERIC agreement specifically states that ERIC is not an agent, fiduciary, partner, nor joint venturer acting on behalf of SOS:

> This Agreement does not constitute or create a partnership or joint venture with any Member or among the Members; appoint any member as an agent of ERIC or any other Member; or appoint ERIC as an agent of any Member; or create any fiduciary obligations among the Members, except as may be expressly set forth in this Agreement.

*E.g.,* Amend. Compl. Ex. 1 (Ex. A ¶13), App. 79; R. Doc. 7-1, at 15. Because ERIC is not SOS's agent, fiduciary, partner or joint venturer, ERIC's use of the private driver data for voter-registration-related uses are not uses of an "entity acting on behalf of…State…in carrying out its function." Therefore, ERIC is not performing a government function under the DPPA.

**(3)** **ERIC is not performing a government function because the disclosure of private driver data to ERIC monthly and at least every 60 days is unnecessarily frequent to support ERIC in producing its reports.**

To satisfy the government function exception, the frequency of private driver data disclosure to ERIC would have to be tailored to meet the frequency of ERIC's reports to SOS. *See Senne*, 695 F.3d at 605–606 (the phrase "for use" at the beginning of each of the exceptions required an analysis of whether the amount and type of the

46

personal information disclosed exceeds the scope of the exception). SOS's frequency of disclosure of private driver data, at least every 60 days and monthly, to ERIC is unnecessarily frequent to support ERIC's reporting. *E.g.,* Amend. Compl. Ex. 1 (Ex. A ¶2); App. 75–75; R. Doc. 7-1, at 11–12.

> **(4)** **"Improve the accuracy of the voter registration records in the SVRS" can't be the government function of the ERIC contract because SOS and DPS are using the private driver data daily and SOS already has the private driver data to contact eligible-but-unregistered (EBU) persons.**

The contract between SOS and the Department of Public Safety states that SOS and the DPS use the private driver data is to "improve the accuracy of the voter registration records in the SVRS." But, "improve the accuracy of the voter registration records in the SVRS" can't be the government function of the ERIC contract because SOS and DPS are doing it every day. Under SOS—DPS contract, SOS and DPS use the private driver data daily to improve the accuracy of the voter registration records in the SVRS. (R.Doc. 15, Kaardal Decl., Ex. 3, ¶¶ 2.1 and 2.4).

Inexplicably, then, in SOS—DPS contract, SOS claims that its disclosures to ERIC are for the same purpose "to improve the accuracy of the voter registration records." *Id.* at ¶ 2.3. But, if DPS and SOS are daily using the private driver data to "to improve the accuracy of the voter registration records," then SOS's monthly or at least every 60-day disclosure of private driver data to ERIC can't be for the same use "to improve the accuracy of the voter registration records."

Appellate Case: 24-1410    Page: 60    Date Filed: 03/14/2024 Entry ID: 5373446

Moreover, ERIC uses the private driver data to print an EBU list—a list of individuals who are *not* registered voters—for the SOS. And, the unregistered individuals in the private driver database are almost exclusively people who declined to register when they were offered the opportunity by DPS to do so. ERIC calls these individuals "EBUs" for eligible but unregistered persons—regardless of eligibility to vote. Under HAVA, there can be no list maintenance activities associated with EBU's because they are not in the SVRS.

Significantly, the SOS's disclosure of private driver data to ERIC is unnecessary to identify EBU's. If the SOS wants a list of EBU's from the private driver data, the SOS could print its own list of EBU's from the private driver data it possesses. Yes, the SOS already has the private driver data under its contract with DPS. So, SOS could print an EBU list without any disclosures to ERIC. So, the fact is it is unnecessary for the SOS to disclose the private driver data to ERIC to print an EBU list. [10]  Inexplicably, the ERIC agreement requires SOS to disclose the private driver data to ERIC for the unlawful and preempted purpose of printing an EBU list anyway.

---

[10]Consistently, SOS has failed to admit to these pedestrian facts in lower court briefs. As the saying goes, "fool me once, shame on you; fool me twice, shame on me."

Appellate Case: 24-1410     Page: 61     Date Filed: 03/14/2024 Entry ID: 5373446

**(5) "SVRS list maintenance" can't be the government function of the ERIC contract because SOS has not obtained the prior consent from local officials to delegate their government function to SOS.**

SOS cannot delegate alone the government function of "SVRS list maintenance" to ERIC because it would have required cooperation with county auditors, municipal and school district clerks who are ultimately responsible for SVRS list maintenance under HAVA and state law. 52 U.S.C. § 21083(a)(2)(A); Minn. Stat. § 201.022, subd. 1 (8, 9). Under Minnesota law, county auditors, municipal and school district clerks are the ones who actually update the SVRS list. *See* Minn. Stat. § 201.022. So, SOS could legally delegate the county auditors', municipal clerks' and school district clerks' "government function" of SVRS list maintenance without the consent of these local officials. SOS has produced no evidence that SOS has obtained their legal consent to do so.

**4. The driver data disclosures to ERIC under Minnesota law and the ERIC Contract do not satisfy DPPA's research exception.**

The driver data disclosures to ERIC under Minnesota law and the ERIC Contract, do not satisfy DPPA's research exception. Conditions for DPPA's research exception are not met because individuals on the EBU list who are subjects of the purported 'research' are actually contacted to register to vote. Kaardal Decl., Ex. 16 (SOS's EBU mailer postcards and invoices for postage), R. Doc. 15, at 1–56; Honey Decl. ¶¶33-35, App. 374–375, R. Doc. 16, at 13–14. Under 18 U.S.C. § 2721(b)(5), sharing of driver data is allowed: "[f]or use in research activities, and for use in

49

producing statistical reports, so long as the personal information is not published, re-disclosed, or used to contact individuals."

But, ERIC or CEIR or both are receiving this private driver data to create EBU lists for the purpose of contacting the individuals on the EBU lists. *Id.* These EBU lists are re-disclosed to the SOS for the express purpose stated in the ERIC agreement for the SOS to contact the individuals on the EBU list. *Id.* In turn, the State then uses the EBU lists to contact the individuals on the EBU list to fulfill the contractual obligation under the ERIC contract. *Id.* By sharing driver data with ERIC, and possibly CEIR, in order to identify and contact individuals on the EBU list, the defendants' and ERIC's use has not satisfied DPPA's research exception which prohibits contacting the individuals subject to the purported "research." Amend. Comp. Ex. 7, App. 143–146, R. Doc. 7–7, at 1–4. (CEIR-related emails)).

### 5. None of the remaining DPPA exceptions are satisfied.

DPPA § 2721(b)(2–4 and 6-14) exceptions do not apply. Nothing in the ERIC contract suggests that ERIC is, or contemplates, using private driver data for any other DPPA exception.

## B. A preliminary injunction would prevent AGA's continuing irreparable injury.

Another *Dataphase* factor is "irreparable injury." *See Dataphase,* 640 F.2d at 112 (another factor is whether the moving party will suffer irreparable injury absent the injunction). Irreparable injury occurs when a party has no adequate remedy at law,

typically because its injuries cannot be fully compensated through an award of damages." Congress's statutory description of injury and related remedies is often decisive. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'"). Here, Congress has defined the legally unauthorized disclosure of private driver data to private, non-governmental parties as an injury creating liability for "preliminary and equitable relief." 18 U.S.C. § 2724. This Congressionally-defined injury is "irreparable" because it is not fully compensable by monetary damages. The continuing harm to AGA by disclosures of private driver data by SOS must be stopped. DPPA's available remedy is preliminary injunctive relief under 18 U.S.C. § 2724(b)(4).

## C. The balance of harms favors granting the preliminary injunctive relief.

Another *Dataphase* factor is the "balance of harms." See *Dataphase*, 640 F.2d at 114 (another factor is the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties). The "balance of harms" analysis is not identical to the "irreparable harm" analysis. In this case, the balance of harms favors granting the preliminary injunctive relief.

On the one hand, Congress has specifically authorized preliminary equitable relief to individuals when their DPPA rights are continuously being violated. SOS's and ERIC's disclosures, obtainings and uses of AGA's private driver data causes

51

continuing irreparable injury to AGA in loss of privacy as recognized by DPPA. According to Congress, DPPA violations are irreparable harm requiring preliminary injunctive relief under 18 U.S.C. § 2724(b)(4). Once the government's unpermitted disclosure, obtaining or use of AGA's private driver data occurs, the disclosure or use cannot be undone. No monetary award can justify the continuing irreparable injury.

On the other hand, the SOS will suffer no harm if the preliminary injunction is granted. The SOS will continue to receive private driver data to improve the accuracy of the SVRS under its contract with the DPS. Under the DPS contract, the SOS correctly uses driver data to match voter registration application information against the SVRS. AGA is not challenging these legal activities under the DPS contract.

But, a preliminary injunction will enjoin the SOS from unlawfully transferring private driver data to ERIC—which causes AGA continuing irreparable injury.

**D. Granting preliminary injunctive relief is in the public interest.**

Another *Dataphase* factor is "the public interest." See *Dataphase,* 640 F.2d at 112 (another factor is whether the public interest will be served by granting the preliminary injunction). The last *Dataphase* factor requires a court to consider whether an injunction is in the public interest. *Winter v. National Resource Defense Council, Inc.,* 555 U.S. 8, 20 (2008); *Roudachevski v. All-American Care Centers*, 648 F.3d 701, 705-06 (8th Cir. 2011). A court must consider both what public interests might be injured and what public interests might be served by granting or denying a preliminary injunction. *See Sierra Club v. United States Army Corp. of Eng'rs*, 645 F.3d 978, 997–998 (8th Cir.

52

2011). This Court has recognized that "the determination of where the public interest lies is also dependent on the determination of likelihood of success on the merits," because it is in the public interest to protect rights. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir.2008) (First Amendment rights case).

## CONCLUSION

The lower court's decision for dismissal should be reversed. Congress enacted DPPA and HAVA to prevent private driver data from being used by anyone for unpermitted and preempted uses such as SOS-sponsored voter registration drives. It is in the public interest that federal courts ensure that the federal mandates of DPPA and HAVA are achieved. No exception should be made for SOS. SOS has run afoul of DPPA and HAVA. SOS is liable for preliminary injunctive relief.

Dated: March 13, 2024.

/s/ Erick G. Kaardal
Erick G. Kaardal, 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612 341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

53

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 (a)(7)

The undersigned certifies that the Brief submitted herein contains 12,983 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word 2016, the word processing system used to prepare this Brief.

Dated: March 13, 2024
                           /s/Erick G. Kaardal
                           Erick G. Kaardal, #229647
                           Mohrman, Kaardal & Erickson, P.A.
                           150 South Fifth Street, Suite 3100
                           Minneapolis, Minnesota 55402
                           Telephone: 612-341-1074
                           Email: kaardal@mklaw.com
                           *Attorneys for the Appellants*

Appellate Case: 24-1410    Page: 67    Date Filed: 03/14/2024 Entry ID: 5373446

## Use of AI Technology Certification

Counsel attests that appropriate steps to verify whether AI technology systems have been used in preparation of this submission and if so, appropriate steps were taken, to the best of counsel's ability, to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: March 13, 2024

/s/Erick G. Kaardal
Erick G. Kaardal, #229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

55

**FOR DOCUMENTS FILED USING CM/ECF**

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on <u>March 13, 2024</u>, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Erick G. Kaardal</u>

Appellate Case: 24-1410    Page: 69    Date Filed: 03/14/2024 Entry ID: 5373446