# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔒𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔉𝔬𝔯 𝔈𝔦𝔤𝔥𝔱 𝔆𝔦𝔯𝔠𝔲𝔦𝔱
### No. 24-1410

---

Association for Government Accountability; Mark Koran, Senator; Calvin Bahr, Senator; James Roschen; Debra Roschen; Megan Nelson; Andrew Nelson; Dawn Appel; Daniel Appel; Cindy Kohn; David Kohn; Tammi Johnson; Larry Johnson; Meghan Hewitt; A.H., by her next friend and parent Meghan Hewitt; Sarah Johnson; A.J., by his next friend and parent Sarah Johnson,

Appellants,

v.

Steve Simon, individually and in his official capacity as Minnesota Secretary of State, or his successor; David Maeda, individually and in his official capacity as Director of Elections for State of Minnesota, or his successor,

Appellees.

---

On Appeal from the United States District Court
For the District of Minnesota
District Court No. 0:23-cv-03159-PAM-DTS

---

## APPELLANTS' REPLY BRIEF

---

Erick G. Kaardal, 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Appellants*

May 7, 2024

Nathan J. Hartshorn, 0320602
Allen Cook Barr, 0399094
Office of Minnesota Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101
Telephone: 651-757-1252
Email: nathan.hartshorn@ag.state.mn.us
Email: allen.barr@ag.state.mn.us
*Attorneys for Appellees*

# Table of Contents

Table of Authorities ................................................................................................ii

ARGUMENT ...........................................................................................................1

I.     Under the DPPA, Simon's and Maeda's disclosure of private driver data to
       ERIC to create the EBU list is a prohibited use. ..........................................1

II.    AGA seeks a narrow injunction to enjoin Appellees from disclosing
       AGA's DPPA-protected driver data to ERIC. .............................................5

III.   Congress did not provide immunity for Simon and Maeda from DPPA
       claims. ............................................................................................................7

IV.    The Appellees' legal arguments on the DPPA exceptions are unpersuasive;
       so, the claims have merit and the preliminary injunction should issue. ................14

       A. AGA alleged Simon's and Maeda's wrongdoings, violating the DPPA,
          in the first amended complaint many times. ......................................15

       B. Simon and Maeda are violating HAVA's non-discrimination
          requirement of 52 U.S.C. § 21083(a)(1)(A). ......................................15

       C. Both DPPA and HAVA protect the privacy of private driver data and
          preempt Minnesota Statutes § 201.13(d) and ERIC contract
          authorizing Simon and Maeda to disclose private driver data to ERIC
          for voter-registration-related uses. ....................................................18

       D. The DPPA prohibits Simon and Maeda from sharing the private driver
          data with ERIC for the prohibited EBU use......................................22

       E. The DPPA's research exception does not apply. .................................25

V.     The other factors for the preliminary injunction have been met...........................26

CONCLUSION ......................................................................................................27

CERTIFICATE OF COMPLIANCE.....................................................................28

Use of AI Technology Certification ......................................................................29

i

# Table of Authorities

Page(s)

**Cases**

*Clingman v. Beaver,*
   544 U.S. 581 (2005) ........................................................................17

*Connecticut Nat. Bank v. Germain,*
   503 U.S. 249 (1992) ..........................................................................8

*Dataphase Systems, Inc. v. C L Systems, Inc.,*
   640 F.2d 109 (8th Cir. 1981) ................................................... 16, 26

*Desert Palace, Inc. v. Costa,*
   539 U.S. 90 (2003) ............................................................................8

*Ela v. Destefano,*
   869 F.3d 1198 (11th Cir. 2017) ........................................................9

*Ex parte Young,*
   209 U.S. 123 (1908) ..........................................................7, 8, 11, 12

*In re Peterson's Estate,*
   42 N.W.2d 59, 230 Minn. 478 (Minn. 1950) ...................................5

*Kraege v. Busalacchi,*
   687 F.Supp.2d 834 (W.D.Wis. 2009) .............................................14

*Luder v. Endicott,*
   253 F.3d 1020 (7th Cir. 2001) ................................................... 13, 14

*Maracich v. Spears,*
   570 U.S. 48 (2013) ................................................................1, 22, 24

*McDaniel v. Precythe,*
   897 F.3d 946 (8th Cir. 2018) ..........................................................11

*Nat'l Assoc. of the Deaf v. Florida,*
   980 F.3d 763 (11th Cir. 2020) ..........................................................7

Appellate Case: 24-1410   Page: 3   Date Filed: 05/08/2024 Entry ID: 5391683

*Nisi v. Brown,*
369 F.Supp. 848 (N.D. Ill. 2019) ..........................................................................12

*Obama for America v. Husted,*
697 F.3d 423 (6th Cir. 2012) ...............................................................................17

*Orduno v. Pietrzak,*
932 F.3d 710 (8thCir. 2019) ............................................................. 9, 12, 13, 27

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ................................................................................................7

*Potocnik v. Carlson,*
9 F.Supp.3d 981 (D. Minn. 2014) ........................................................................11

*Rine v. Imagitas, Inc.,*
590 F.3d 1215 (11th Cir. 2009) ...........................................................................22

*Roberts v. Source for Public Data,*
2011 WL 1254099 (W.D.Mo. 2011) .....................................................................13

*Rochester Methodist Hosp. v. Travelers Ins. Co.,*
728 F.2d 1006 (8th Cir. 1984) .............................................................................14

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996) ...............................................................................................11

*Senne v. Village of Palatine, Ill.,*
695 F.3d 597 (7th Cir.  2012) (en banc ................................................................1

*Spokeo, Inc. v. Robins,*
136 S.Ct. 1540 (2016) ..........................................................................................27

*Springdale Educ. Ass'n v. Springdale School Dist.,*
133 F.3d 649 (8th Cir. 1998) ...............................................................................15

*Webb v. City of Maplewood,*
889 F.3d 483 (8th Cir. 2018) ...............................................................................11

Appellate Case: 24-1410     Page: 4     Date Filed: 05/08/2024 Entry ID: 5391683

**Statutes**

18 U.S.C. § 2715(2) .................................................................................9

18 U.S.C. § 2721 ...........................................................................19, 20, 21

18 U.S.C. § 2721(a) ...........................................................................19, 22

18 U.S.C. § 2721(b) ......................................................................19, 21, 23

18 U.S.C. § 2721(c) ...............................................................................23

18 U.S.C. § 2721(b)(1) ...........................................................................23

18 U.S.C. § 2721(b)(1)-(14) ....................................................................22

18 U.S.C. § 2721(b)(5) ...........................................................................25

18 U.S.C. § 2723 ...........................................................................11, 12

18 U.S.C. § 2723(b) ...............................................................................13

18 U.S.C. § 2724 ...............................................................................9, 27

18 U.S.C. § 2725 ...................................................................................10

18 U.S.C. § 2725(2) ...........................................................................11, 12

52 U.S.C. § 21083(a)(1)(A) ..........................................................8, 15, 16, 17

52 U.S.C. § 21083(5)(B)(i) ..........................................................19, 20, 21, 22

Minnesota Statutes § 201.13(d) .............................................................passim

**Other Authorities**

2B Sutherland Statutory Construction (7th ed.) § 51:2.......................................19

Appellate Case: 24-1410    Page: 5    Date Filed: 05/08/2024 Entry ID: 5391683

It is not the government's function to disclose private driver data of its citizens to private entities. The injunctive relief requested remains narrow in scope to stop the individual governmental perpetrators, who are not immune under the Driver's Privacy Protection Act (DPPA), from further wrongdoing. The district court's decision should be reversed.

## ARGUMENT

**I.    Under the DPPA, Simon's and Maeda's disclosure of private driver data to ERIC to create the EBU list is a prohibited use.**

Under the DPPA, the general federal rule for private driver data is non-disclosure. *Maracich v. Spears*, 570 U.S. 48, 60-61 (2013). "Moreover, and especially in light of the particular statutory structure here that sets forth such a broad prohibition against disclosure, the exceptions should not be read to eviscerate the rule they modify. The words '[f]or use' perform a critical function in the statute and contain the necessary limiting principle that preserves the force of the general prohibition while permitting the disclosures compatible with that prohibition." *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 605–06 (7th Cir. 2012) (en banc). The Appellants, collectively, "AGA," assert that the Appellees' monthly disclosure of private driver data to ERIC to create the eligible-but-unregistered individuals (EBU) list, is a prohibited "use" under the DPPA because the government can create its own EBU list without ERIC.

1

The Appellees admit that they don't need ERIC to contact EBUs because the State has the driver data and doesn't need filtering by a third-party:

> There is no dispute that OSS already possesses the contact information of eligible-but-unregistered individuals before that data has been shared with ERIC. Thus, but for the fact that ERIC needs to filter the data to generate eligible-but-unregistered lists, OSS already has the information to contact those individuals.

Simon Br. at 25-26.

Meanwhile, ERIC has described admitted "goals" as a corporate entity to target certain demographic groups for election purposes. Simon Br. at 2; Amend. Compl. ¶ 27; App. 15; R. Doc. 7–0; R.Doc. 15, Kaardal Decl., Ex. 14. See https://ericstates.org/who-we-are/ (last visited: May 5, 2024)). In 2011, ERIC founder and board member David Becker disclosed that research had been conducted to determine EBUs ERIC targets for voter registration drives are "disproportionately" demographic groups typically targeted by Democratic campaigns and progressive non-profits. Honey Decl. ¶43, App. 376; R. Doc. 16, at 15. Seven years later, in 2018, Becker, boasted that "ERIC is the single most effective voter registration drive in the history of the United States." Honey Decl. ¶42, App. 376; R. Doc. 16, at 15.

Even so, with the knowledge and authorization of Simon and Maeda, ERIC further share private driver data with the Center for Election Innovation Research (CEIR), another private entity:

> The State uploads the cleaned EBU list to the ERIC SFTP site, and ERIC securely transfers it to CEIR.

2

Amend. Compl. Ex. 7 at 2; App. 144; R. Doc. 7–7. This governmental approval of ERIC's actions reveals the gross violation of Minnesota citizen's expectation of driver data privacy under the DPPA.

Since January 2022, nine other states–Louisiana, Alabama, Florida, Missouri, West Virginia, Iowa, Ohio, Texas and Virginia—have withdrawn from ERIC membership in part because of concerns about DPPA use violations associated with ERIC's EBU list. (R.Doc. 15, Kaardal Decl., Ex. 15). See https://www.npr.org/ 2023/10/20/1207142433/eric-investigation-follow-up-voter-data-election-integrity. ERIC's EBUs are designed and defined voter registration drives focused on persons having declined to register at the state's motor vehicle department. *Id.* Despite ERIC's refusal to remove the contractual obligation for member states, like Minnesota, to contact the individuals identified on the EBU list, it remains a DPPA violation each time the Appellees disclose an individual's private driver data to ERIC. *Id.*

The continual violations make little sense considering the low yield in EBU results. Minnesota has over 4,100,000 licensed drivers. See https://www.statista.com/ statistics/ 198029/total-number-of-us-licensed-drivers-by-state/ (last visited: May 7, 2024). Each month, the private driver data of millions of people are disclosed to ERIC. Simon Br. at 25-26. In return, the Appellees receive an EBU list of information already in the state's possession. According to the government's invoices for EBU mailers and postage, over a 53-month period, here are

3

the numbers of EBUs contacted by the Secretary of State's office based on ERIC's EBU list.

| Date | Number of EBU Mailers |
|---|---|
| 5/19/2019 | 46,655 |
| 7/3/2019 | 7,525 |
| 8/6/2019 | 7,285 |
| 9/23/2019 | 17,993 |
| 10/14/2019 | 9,869 |
| 12/16/2019 | 7,520 |
| 2/11/2020 | 21,274 |
| 3/20/2020 | 5,986 |
| 4/30/2020 | 8,017 |
| 6/30/2020 | 4,508 |
| 1/28/2021 | 5,983 |
| 2/10/2021(1) | 10,748 |
| 2/10/2021(2) | 6,368 |
| 2/24/2021 | 8,460 |
| 3/30/2021 | 7,082 |
| 5/4/2021 | 6,849 |
| 5/28/2021 | 6,956 |
| 7/12/2021 | 9,043 |
| 7/27/2021 | 7,576 |
| 8/19/2021 | 9,403 |
| 9/29/2021 | 7,169 |
| 11/3/2021 | 7,158 |
| 12/14/2021 | 8,734 |

| Date | Number of EBU Mailers |
|---|---|
| 12/29/2021 | 6,747 |
| 1/26/2022 | 6,464 |
| 3/2/2022 | 8,295 |
| 3/24/2022 | 7,224 |
| 4/29/2022 | 8,055 |
| 5/31/2022 | 10,592 |
| 6/29/2022 | 7,549 |
| 7/8/2022 | 7,326 |
| 8/24/2022 | 9,418 |
| 10/12/2022 | 7,445 |
| 2/16/2022 | 7,805 |
| 2/20/2023 | 6,774 |
| 2/24/2023 | 8,505 |
| 3/3/2023(1) | 7,089 |
| 3/3/2023(2) | 7,805 |
| 3/10/2023 | 6,527 |
| 4/27/2023 | 6,708 |
| 5/31/2023 | 8,361 |
| 7/10/2023 | 7,015 |
| 7/31/2023 | 10,404 |
| 9/18/2023 | 8,182 |
| 10/4/2023 | 8,976 |
| 10/31/2023 | 16,136 |
| **Total:** | **436,360** |

Kaardal Decl., Ex. 16, at p. 5-51; R. Doc. 15-16. Over the 53-month period from 5/19/2019 through 10/31/2023, the total mailed was 436,360. For this 53-month period, the monthly average is about 8,200 voter registration mailers mailed to ERIC's EBU list.

4

The State's low yield of EBUs per individual driver data disclosure makes little sense considering the impact of disclosing individuals' driver data to ERIC and the consequences of millions of DPPA violations. Using the numbers provided above, over the 53-month period, the total driver private data disclosures adds up to be 217,300,000—53 months times 4,100,000 licensees. The yield of one EBU per person's driver data disclosure is about 0.002% or 2 in 1,000. So, for each EBU mailer sent, 500 individuals' private driver data records have been disclosed to ERIC. The State's means of disclosing millions of people's private driver data to ERIC in this way simply does justify the ends—particularly because ERIC's EBU list contains information the State admits it already possesses.

Although the State receives virtually nothing from ERIC's EBU list that the State doesn't already have, ERIC receives exclusive, known, special privileges including obtaining the private driver data, analyzing the data, learning from the data analysis and disclosing the information to others such as CEIR.

## II.     AGA seeks a narrow injunction to enjoin Appellees from disclosing AGA's DPPA-protected driver data to ERIC.

The amended complaint seeks a narrow injunction against "defendants' disclosures of DPPA-protected private driver data to ERIC under Minnesota Statutes § 201.13(d) and under the ERIC contract." Amend. Compl., p. 36, App. 47, R. Doc. 7–0. The amended complaint focuses on the ERIC contract and the DPPA-violating disclosures thereunder—not invalidating Minnesota Statutes § 201.13(d). *See In re*

5

*Peterson's Estate*, 42 N.W.2d 59, 62, 230 Minn. 478, 482 (Minn. 1950) ("[T]he general rule is that a contract executed in violation of a statute which imposes a prohibition and a penalty for the doing of an act—such as the pursuit of an occupation, business, or profession without being possessed of a license as required by law for the protection of the public—is void…"). Otherwise, Minnesota Statutes § 201.13(d) and the ERIC contract remain intact after this narrow injunction is issued. The Appellees can share voter data base information with ERIC—not DPPA-protected private driver data—to accomplish its goals.

The Wisconsin Voter Alliance (WVA) amicus curiae brief goes into even greater detail about the non-governmental origins of ERIC and its voter registration scheme targeting demographic groups who favor Democratic and progressive campaigns. WVA Am. Cur. Br. at i. Private, sensitive government data in the State MVA Database is very accurate and highly valuable to political operatives. *Id.* The origins of ERIC reveal the motivation and desire to access motor vehicle data of unregistered individuals for voter registration drives. *Id.*

But, as if tone-deaf to Republicans' and conservatives' concerns, the Appellees' brief at page 2 describes ERIC as an "organization to leverage data-matching technology and a robust interstate data-sharing program so that they could…(2) better reach out to potential voters who were unregistered buy likely eligible. Since 2012, to achieve ERIC's goals, each member state submits…motor-vehicle licensing and registration data to ERIC at least every 60 days."

6

In response, the Appellants seek only a narrow injunction enjoining the continuing disclosures of AGA's DPPA-protected private driver data to ERIC. Amend. Compl., p. 36, App. 47, R. Doc. 7–0.

## III. Congress did not provide immunity for Simon and Maeda from DPPA claims.

As argued in the principal brief, the district court erred in relying upon *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 107 (1984) as an exception to *Ex parte Young*'s exception to state sovereign immunity. App. 6–7, R. Doc. 41, at 6–7. *See also, Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020) (referring to the *Pennhurst* doctrine as an exception to *Ex parte Young*). The justification for *Ex parte Young* is that a state official who acts in contravention of the federal Constitution or federal law is "stripped of his official or representative character"—the individual cannot be acting lawfully on behalf of the state when he or she acts unconstitutionally or in violation of federal law such as, DPPA. *Ex parte Young*, 209 U.S. at 160. *Ex parte Young* serves to "permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex parte Young*, 209 U.S. at 160).

The Appellees' brief at pages 7, 10 through 12, applying immunity to "claims being directed against the State" is unpersuasive. In the first instance, the Appellees' immunity argument fails to account for the partisan nature of ERIC's work with DPPA-protected driver data "disproportionately" benefitting demographic groups

7

that favor Democratic and progressive campaigns. (Honey Decl. ¶43, App. 376; R. Doc. 16, at 15.).  Simon and Maeda have no legal authority to engage in voter registration schemes favoring Democratic and progressive campaigns.  See, e.g., 52 U.S.C. § 21083(a)(1)(A).  In these types of situations, the DPPA's statutory text unambiguously authorizes civil actions against "individuals" such as Simon and Maeda who use their authority as election officials to favor one side or the other.

As the Appellees know, the precedents establish that the starting point for statutory interpretation is the statutory text. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98–99 (2003), citing *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254 (1992).  Yet, the Appellees' brief at pages 8 through 9 on *Ex Parte Young* relief immunity and at pages 10 through 12 on individual capacity immunity do not use the statutory text as "the starting point for statutory interpretation."  *Desert Palace, Inc.*, 539 at 98–99

In the DPPA, Congress enacted a remedial scheme under § 2724(a) and § 2725(2) to ensure that all DPPA-violating individuals, including law-breaking state officials and employees, are subject to civil action enforcement. Section 2724(a) and (b), by unambiguous terms, creates a private right of action for individuals to sue DPPA-violating individuals whoever they are:

> (a) Cause of action.–A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
> (b) Remedies.--The court may award…(4) such other preliminary and equitable relief as the court determines to be appropriate.

8

18 U.S.C. § 2724.  *See, e.g., Orduno v. Pietrzak*, 932 F.3d 710, 717 (8thCir. 2019) (city's police chief is a "person" liable under DPPA for violations).

The terms of 18 U.S.C. § 2724–for "such other preliminary and equitable relief as the court determines to be appropriate"–and of § 2725(2)—defining "person" as "an individual, organization or entity, but does not include a State or agency thereof"—unambiguously authorize lawsuits against "individuals" such as Simon and Maeda who are "individuals" connected to DPPA violations. On its face, the statutory provisions do *not exclude* "individuals" such as Simon and Maeda who are state officials or employees connected to DPPA violations from being sued for prospective injunctive relief.

While Congress specifically excluded states and agencies under 18 U.S.C. § 2715(2), Congress did not exclude state officials or state employees, individually; the silence of Congress is controlling where Congress knows how to say something, but chooses not to. *Ela v. Destefano,* 869 F.3d 1198, 1202 (11th Cir. 2017) (citation omitted).   Prospective injunctive relief under DPPA falls within the Eleventh Amendment immunity exception recognized by the U.S. Supreme Court in *Ex parte Young*.

To be sure, under § 2725(2), DPPA defines "person" as "an individual, organization or entity, but does not include a State or agency thereof":

(2) "person" means an individual, organization or entity, but does not include a State or agency thereof

9

18 U.S.C. § 2725 (emphasis added). However, the phrase "a State or agency thereof" is unambiguously narrow, and does not preclude claims for prospective injunctive relief against "individuals" who are state officials or employees connected to DPPA violations. The Merriam Webster Dictionary provides the following principal definition for the word "individual" as "a single human being as contrasted with a social group or institution." See https://www.merriam-webster.com/dictionary/individual#:~:text=(1),as%20 distinguished%20from%20a %20group (last visited: May 7, 2024). Under this dictionary definition, Simon and Maeda are each "individuals" because they are each "a single human being as contrasted with a[n] … institution," here, the State or Secretary of State's office. *Id.* Suing Simon and Maeda, individually, under this definition is in contrast with suing the "State" or the Secretary of State's office as "an agency thereof."

Accordingly, AGA, conforming to the DPPA's unambiguous text authorizing DPPA lawsuits against "individuals," but not the Secretary of State's office, sued Simon and Maeda as individuals. AGA did not sue the State of Minnesota or the Secretary of State's Office. The first amended complaint states that Simon and Maeda are sued "individually." Amend. Compl. ¶¶24–27, App. 14–15; R. Doc. 7, at 4–5. (R.Doc. 7). Paragraph 24 states Simon, "individually, is sued." Paragraph 26 states Maeda, "individually, is sued." *Id.* And, AGA under the DPPA's unambiguous text

has a Congressionally-established private cause of action to sue Simon and Maeda for violating AGA's DPPA rights—as AGA did.

Further, the Appellees' brief at pages 8 through 9, claims that *Ex Parte Young* injunctive relief is unavailable under the DPPA because "'Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right.'" *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 74 (1996)." But, 18 U.S.C. § 2723 authorized a legal action against only one *state* agency—a state motor vehicle department—as an exception to DPPA's civil enforcement provision excluding the "State or state agencies thereof" from legal action. *See* 18 U.S.C. § 2725(2). Allowing the Attorney General to sue a single state agency is not a complete remedial scheme against DPPA violations. To be sure, the Eleventh Amendment "protects States and their arms and instrumentalities from suit in federal court." *Webb v. City of Maplewood,* 889 F.3d 483, 485 (8th Cir. 2018). But, as with the exception to Eleventh Amendment immunity established in *Ex parte Young,* 209 U.S. 123 (1908), "a private party may sue state officials in their official capacities for prospective injunctive relief." A similar claim for prospective injunctive relief is authorized by DPPA. *McDaniel v. Precythe,* 897 F.3d 946, 951–52 (8th Cir. 2018).

The Appellees' brief relies on the faulty analysis found in a footnote in *Potocnik v. Carlson*, 9 F.Supp.3d 981, 991 n.5 (D. Minn. 2014). *Potocnik* erroneously assumed that DPPA has a detailed and *complete* remedial scheme. But, 18 U.S.C. § 2723 authorized a legal action against only one *state* agency—a state motor vehicle

department—as an exception to DPPA's civil enforcement provision excluding the "State or state agencies thereof" from legal action. *See* 18 U.S.C. § 2725(2). *See also Nisi v. Brown,* 369 F.Supp. 848, 853 (N.D. Ill. 2019) (*Ex Parte Young* remedies do not apply in private actions under the DPPA). Allowing the Attorney General to sue a single state agency is not a complete remedial scheme against DPPA violations. 18 U.S.C. § 2723. So, *Ex Parte Young* injunctive relief is available for the Appellees under the DPPA against Simon and Maeda because they do not work in the Department of Public Safety.

Further, the Appellees' brief at pages 10 through 12 inaccurately claims that the "Secretary is immune because the judgment AGA seeks would actually operate against Minnesota, not merely the Secretary, individually…Enjoining a state statute indisputably would interfere with public administration and restrain Minnesota from acting under the statute." To the contrary, the amended complaint seeks a narrow injunction against "defendants' disclosures of DPPA-protected private driver data to ERIC under Minnesota Statutes § 201.13(d) and under the ERIC contract"—which is appropriate since the DPPA-protected data transfer to ERIC is part of a voter registration scheme which favors Democratic and progressive campaigns. Amend. Compl., p. 36, App. 47, R. Doc. 7–0.

The Appellees' cited cases do not support immunity for the Appellees under these circumstances. AGA claims are similar to *Orduno v. Pietrzak,* 932 F.3d 710 (8th Cir. 2019) where individual-capacity DPPA claims for individual actions were allowed

12

because the DPPA-violating disclosures were not sanctioned by any official policy. In that case, the individual defendant accessed driver's license records without a law-enforcement purpose. *Id.* at 717. Similarly, here, the individual-capacity claims for individual actions should be allowed in AGA's case because ERIC's voter registration scheme favors Democratic and progressive campaigns and is not sanctioned by the DPPA nor Minnesota Statutes § 201.13(d).

All four of the Appellees' cited cases are distinguishable. First, the district court in *Roberts v. Source for Public Data*, 2011 WL 1254099, at *8 (W.D.Mo. 2011) noted that the state officials sued were connected to the Missouri Department of Revenue, Divisions of Taxation and Motor Vehicle and Driver Licensing, which fall under section 2723(b) enforcement:

> Section 2723(b) is an enforcement mechanism specifically targeting the very kind of state officials that Plaintiffs have attempted to sue here for damages.

Simon and Maeda are not connected to Minnesota's Department of Public Safety; so, section 2723(b) does not apply to them. Therefore, AGA's private cause of action persists.

Second, *Luder v. Endicott,* 253 F.3d 1020, 1023 (7th Cir. 2001) is a different type of case because it involved whether state prison employees brought action against prison supervisors in their personal capacity to recover back wages under the Fair Labor Standards Act for work allegedly performed before and after employees' official shift.

Third, the *Luder* decision was relied on in a subsequent district court DPPA case. In *Kraege v. Busalacchi*, 687 F.Supp.2d 834, 837 (W.D.Wis. 2009), the district court relied on *Luder* to dismiss a DPPA complaint because the defendants only contention was that defendants released driver information under the state's policies. *Id.* Here, the AGA has done much more by showing that Simon's and Maeda's disclosures are for ERIC's voter registration scheme which favors Democratic and progressive campaigns—a use which is not authorized by the DPPA nor Minnesota Statutes § 201.13(d).

Fourth, *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1012 (8th Cir. 1984) involved Travelers Insurance Company unsuccessfully arguing that the suit against it is barred by sovereign immunity because the suit was, in fact, one against the United States. So, that case is inapplicable.

## IV. The Appellees' legal arguments on the DPPA exceptions are unpersuasive; so, the claims have merit and the preliminary injunction should issue.

The Appellees' brief at pages 12 through 29, in support of an alternative ground for dismissal and against a preliminary injunction, contains unpersuasive arguments on the merits regarding the DPPA exceptions. The Appellants' principal brief at pages 29 through 50, supporting a preliminary injunction, laid out several arguments that the DPPA's exceptions do not apply. Instead of repeating those arguments here, the Appellants rebut Appellees' arguments here one-by-one.

14

### A. AGA alleged Simon's and Maeda's wrongdoings, violating the DPPA, in the first amended complaint many times.

The Appellees' brief at pages 13 through 14 inaccurately claims that the first amended complaint does not allege wrongdoing by Simon and Maeda. Yet, Simon and Maeda, individually and collectively as "defendants," are referenced over 50 times. The first amended complaint alleges that Minnesota state election officials Simon and Maeda, who is also ERIC's Vice Chair, are approving and implementing the ERIC contract violating the DPPA by disclosing AGA's private driver data to ERIC for voter registration purposes—which does not fall under a DPPA exception.

### B. Simon and Maeda are violating HAVA's non-discrimination requirement of 52 U.S.C. § 21083(a)(1)(A).

The Appellees' brief at pages 23 through 25 erroneously argues that HAVA does not preclude Simon and Maeda from having an exclusive private driver data sharing relationship with ERIC, a private corporation. This is part of the Appellees' argument for a DPPA government function exception.

The Appellees erroneously argue that the HAVA argument based on 52 U.S.C. § 21083(a)(1)(A) was not raised below. However, HAVA preemption was raised repeatedly in the complaint and motion practice before the district court. See, e.g., Amend. Compl. ¶¶ 139-141, App. 33-34, R. Doc. 7–0. Plus, the HAVA preemption argument can be considered in light of the Appellees' brief alternative argument, at pages 12 through 26, for dismissal of the complaint. See *Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) ("A complaint should not be

15

so dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief…We do not apply a standard of heightened specificity, more stringent than the usual pleading requirements of the civil rules, in cases alleging municipal liability under section 1983.") (citations omitted). Finally, the HAVA preemption argument based on 52 U.S.C. § 21083(a)(1)(A) is also relevant in determining whether the Appellants are likely to succeed on the merits for their requested preliminary injunction. See *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc).

Then, the Appellees' brief at pages 23 through 25, erroneously argues that HAVA's non-discrimination requirement does not apply to Simon and Maeda. Basically, the Appellees argue that Simon and Maeda are free to work with ERIC, with Maeda as ERIC's Vice Chair, to use the private driver data to target specific demographic groups which favor Democratic and progressive campaigns as they please because ERIC is not a "shadowy 'private corporation'" and because the private driver data won't be shared with CEIR and others. *Id.* at 24. But, ERIC founder David Becker's statements, ERIC's history laid out in WVA's amicus curiae brief and the statements of multiple states' election officials who have withdrawn from ERIC show concerns that ERIC is a "shadowy private corporation" set up to obtain private driver data from the states to create EBU lists which favor Democratic and progressive campaigns.

16

Fortunately, there is a federal law, HAVA's 52 U.S.C. § 21083(a)(1)(A), which requires that Simon and Maeda implement the statewide voter registration system and list (SVRS) in a uniform and non-discriminatory manner:

> [E]ach State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State (in this subsection referred to as the "computerized list")…

Because Simon and Maeda are disclosing private driver data exclusively to Delaware private corporation ERIC for voter-registration-related uses targeted at certain demographic groups which favor Democratic and progressive campaigns, Simon and Maeda are violating HAVA's non-discriminatory requirement.

States discriminate when they "pick and choose among groups" to dole out important election-related privileges. The U.S. Court of Appeals decision in *Obama for America v. Husted*, 697 F.3d 423, 435–36 (6th Cir. 2012) stands for the proposition that states are not permitted to pick and choose among groups for special election-related privileges. 697 F.3d at 435–36 (citation omitted). "[P]articularly where [voting restrictions] have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition." *Clingman v. Beaver,* 544 U.S. 581, 603 (2005) (O'Connor, J., concurring).

17

Similarly, it is "equally worrisome" that Simon and Maeda are picking and choosing a Delaware corporation ERIC for special election-related privileges to target demographic groups which favor Democratic and progressive campaigns. The known special privileges provided to ERIC include obtaining the private driver data, analyzing the data, learning from the data analysis and disclosing the information to others such as CEIR. And, Simon and Maeda receive ERIC's EBU list which Simon and Maeda use to mail voter registration mailers to. Simon and Maeda have not offered the same special privileges to similarly situated parties such as President Trump's Presidential Advisory Commission on Election Integrity, Andy Cilek, AGA or anyone else.

**C.** **Both DPPA and HAVA protect the privacy of private driver data and preempt Minnesota Statutes § 201.13(d) and ERIC contract authorizing Simon and Maeda to disclose private driver data to ERIC for voter-registration-related uses.**

The Appellees' brief at pages 20 through 23 erroneously claims that Simon's and Maeda's disclosures of private data to ERIC are compliant with the DPPA and HAVA. The Appellees argue that the driver privacy protections of the DPPA and HAVA are unrelated:

> AGA is asking the Court to read words into HAVA that are not there. AGA insists that under section 21083, the Secretary can *only* use driver data to match information in the SVRS and *only* to verify the accuracy of voter registration information. But the word "only" appears nowhere in the relevant language.

Simon Br. at 21.

The Appellees could not be more wrong. Generally, courts try to construe statutes on the same subject harmoniously, and, if possible, give effect to every provision in both. 2B Sutherland Statutory Construction (7th ed.) § 51:2, Statutes on the same subject construed together (footnotes omitted). But, if the two statutes are deemed irreconcilable, typically, the later, specific statute controls over the earlier, general statute. *Id.* A reading of the driver privacy protections of DPPA and the driver privacy protections of HAVA's § 21083(5)(B)(i), show they overlap to protect driver data privacy. These federal laws show that Simon and Maeda are not legally authorized to disclose private driver data to ERIC and other private parties for voter-registration-related uses. 18 U.S.C. § 2721 and 52 U.S.C. § 21083(5)(B)(i) preempt any state law or contract which authorizes the Appellees to disclose private driver data to a non-governmental, private party for voter-registration-related uses.

DPPA was enacted in 1994. HAVA was enacted in 2002. Both DPPA and HAVA unambiguously protect the privacy of private driver data. The DPPA provision at issue is 18 U.S.C. § 2721 which has two relevant parts protecting privacy of private driver data. 18 U.S.C. § 2721(a) states that private driver data shall not be disclosed. Then, § 2721(b) authorizes narrowly-drawn exceptions to 2721(a)'s rule of non-disclosure of private driver data. Importantly, § 2721(b) does not include an exception for voter-registration-related uses which are the "uses" at issue in this appeal.

HAVA provision, 52 U.S.C. § 21083(5)(B)(i), further protects the privacy of private driver data while allowing its use to update voter records. 52 U.S.C. § 21083(5)(B)(i) applies whenever the Appellees obtain private driver data from the State department of motor vehicles for voter-registration-related uses. Specifically, § 21083(5)(B)(i) requires that such disclosures be subject to a written agreement limiting the voter-registration-related uses of the private driver data—"to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration":

> (B) Requirements for State officials
> (i) Sharing information in databases
> The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

52 U.S.C. § 21083(5)(B)(i) is a later, more specific, and more limiting law on SOS beyond 18 U.S.C. § 2721's privacy protections. 52 U.S.C. § 21083(5)(B)(i) is later than 18 U.S.C. § 2721 because HAVA was enacted in 2002 and DPPA was enacted in 1994. 52 U.S.C. § 21083(5)(B)(i) is more specific than 18 U.S.C. § 2721 because 52 U.S.C. § 21083(5)(B)(i) protects private driver data privacy applicable to SOS's voter-

registration-related uses while 18 U.S.C. § 2721 does not even mention SOS's voter-registration-related uses of private driver data.

And, 52 U.S.C. § 21083(5)(B)(i) is more limiting than 18 U.S.C. § 2721. HAVA goes beyond DPPA's privacy protections and specifically regulates SOS as it relates to voter-registration-related uses of private driver data. SOS, as it relates to private driver data, is limited by § 21083(5)(B)(i) in the following ways: (1) use of private driver data only pursuant to an agreement between the chief State election officials and the official responsible for the State motor vehicle authority of a state; (2) use of private driver data only "to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority" and (3) use of private driver data only "to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration." *Id.*

Thus, Simon's and Maeda's disclosures of private driver data to ERIC for voter-registration-related uses violate the limitations of § 21083(5)(B)(i) because such uses are legally unauthorized under § 21083(5)(B)(i). First, Minnesota Statutes § 201.13(d) authorizes such disclosures to ERIC. Second, SOS-ERIC agreement under Minnesota Statutes § 201.13(d) authorizes such disclosures to ERIC. But, under § 21083(5)(B)(i), Simon and Maeda can only use the private driver data to do its own "match" and only to the extent required to verify the accuracy of the voter registration application information. So, Simon's and Maeda's disclosures to ERIC,

21

whether authorized by Minnesota Statutes § 201.13(d) or the ERIC agreement, violate § 21083(5)(B)(i). Therefore, Minnesota Statutes § 201.13(d) and ERIC agreement, as implemented by Simon and Maeda, are preempted by § 21083(5)(B)(i).

### D. The DPPA prohibits Simon and Maeda from sharing the private driver data with ERIC for the prohibited EBU use.

The Appellees' brief at pages 25 through 26 unpersuasively argues that Simon's and Maeda's sharing of the private driver data with ERIC falls under the DPPA's government function exception. And, the Appellees claim that the courts will "defer to [the] state as to the proper activities of the [agency]." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224-1225 (11th Cir. 2009). But, as explained above, such reasoning does not apply if the state's purported government function is preempted by federal law—the DPPA—as is the case here.

Importantly, DPPA is essential for protecting individuals from potential abuses such as identity theft, stalking, and harassment that could result from the unauthorized disclosure of their private driver data. And, DPPA helps to uphold individuals' privacy rights and fosters trust between citizens and government agencies.

Under DPPA, 18 U.S.C. § 2721(a), the general rule for private driver data is non-disclosure. *Maracich*, 570 U.S. at 60-61. However, there are multiple exceptions for which disclosure of driver's license information *is permitted. See* 18 U.S.C. § 2721(b)(1)-(14) (emphasis added). *Id.* These exceptions generally relate to various governmental and business purposes, such as "use by any government agency,

22

including any court or law enforcement agency, in carrying out its functions," as well as provisions relating to the resale and disclosure of information by authorized recipients for permitted uses. *See* 18 U.S.C. § 2721(b) and (c).

First, the Appellees' brief at pages 15 through 16, errs in claiming that ERIC's contract stating that ERIC is not an agent, fiduciary, partner or joint venturer is immaterial to the question whether ERIC is a private entity "acting on behalf of a...State...agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). To the contrary, the Court should take judicial notice that the state agency and ERIC signed a contract stipulating that ERIC is not an agent, fiduciary, partner or joint venturer of the State. And, the Court should adjudicate that, based on that stipulation, ERIC is not a private entity "acting on behalf of a...State...agency in carrying out its functions."

Second, the Appellees' brief at page 17 claims that frequent sharing of AGA's private driver data is necessary to keep ERIC updated. AGA's argument was that there shouldn't be any sharing of AGA's private driver data that is unnecessarily frequent. Why should AGA's data be shared every 30 or 60 days when AGA hasn't moved or changed registration status. The Appellees still have not responded to the argument regarding unnecessarily frequent disclosures.

Third, the Appellees' brief at page 18 claims that despite the state's daily updating of the voter registration data base that the disclosures to ERIC are still necessary because of its significantly larger data base consisting of more than 20

23

states.  Simon and Maeda claim it is "self-evident" that the private driver data sharing with ERIC provides "more accurate results than OSS would have with Minnesota data alone."  But, Simon and Maeda still have not explained why the disclosures of AGA's data to ERIC are necessary to accomplish its goals for a more accurate voter registration data base.

Fourth, the Appellees' brief at page 18 counters AGA's argument that the EBU lists could be created internally.  The Appellees state they could create EBU lists internally, but the EBU lists it receives from ERIC are "more accurate."  *Id.* at 18.  But, Simon and Maeda still have not explained why the disclosures of AGA's data to ERIC are necessary to accomplish its goals for a more accurate EBU list.

Fifth, the Appellees' brief at pages 18 through 19 claims that Simon's and Maeda's sharing of private driver data with ERIC can't itself be the government function.  The Appellees claim that AGA's argument "ignores the plain meaning of both the DPPA and Minnesota law."  *Id.* at 18.  The Appellees' argument allows the DPPA's government function exception to swallow the DPPA's non-disclosure rule. If it is a government function to share private driver data with private parties, then the government can share private driver data with private parties regardless of the private parties' use of the private driver data.  But, the DPPA has a non-disclosure rule and the DPPA exceptions must be read narrowly as not to swallow the rule. *Maracich*, 570 U.S. at 60–61.

Appellate Case: 24-1410   Page: 29   Date Filed: 05/08/2024 Entry ID: 5391683

Finally, the Appellees' brief at page 19 erroneously asserts that the AGA is complaining that "Minnesota could choose a different way to fulfill those functions. However, AGA's point is different. Simon and Maeda are serial violators of the DPPA and HAVA based on their disclosures of private driver data to ERIC for the purposes of targeting demographic groups favoring Democratic and progressive campaigns. The fact Simon and Maeda haven't stopped since the filing of the lawsuit proves their commitment to serial violations of DPPA and HAVA.

### E.     The DPPA's research exception does not apply.

The Appellees' brief at pages 25 through 26 erroneously argues that the DPPA's research exception applies. In fact, conditions for DPPA's research exception are not met because individuals on the EBU list who are subjects of the purported 'research' are actually contacted to register to vote. Kaardal Decl., Ex. 16 (SOS's EBU mailers and invoices for postage), R. Doc. 15, at 1–56; Honey Decl. ¶¶33-35, App. 374–375, R. Doc. 16, at 13–14. Under 18 U.S.C. § 2721(b)(5), sharing of driver data is allowed: "[f]or use in research activities, and for use in producing statistical reports, so long as the personal information is not published, re-disclosed, or used to contact individuals." In response, the Appellees ironically claim that it doesn't necessarily need ERIC to contact the eligible-but-unregistered persons (EBU) because it already has the data. Simon Br. at 25-26. And, that the Appellees are contacting the EBUs, not ERIC. *Id.* So, according to the Appellees, ERIC's work is

Appellate Case: 24-1410     Page: 30     Date Filed: 05/08/2024 Entry ID: 5391683

"research." But, without the condition of "no contact" being met, the purported use does not fall under the DPPA's research exception.

## V. The other factors for the preliminary injunction have been met.

At the end of the Appellees' brief, pages 27 through 29, the Appellees claim that no preliminary injunction should issue. The Appellants in their principal brief have already shown why the other *Dataphase* factors for preliminary injunction have been met. *Dataphase Systems, Inc.*, 640 F.2d at 112. First, the Appellees claim that a preliminary injunction should not issue because the purportedly DPPA-violating private driver data disclosures began in 2014 and that a preliminary injunction would create a "severe risk" to accuracy of the state's voter registration data base. However, it was only in the Appellees' Response Brief, filed in May of 2024, that Simon and Maeda admitted to disclosing AGA's private driver data to ERIC for the purpose of ERIC creating the EBU list. And, Simon and Maeda also admitted that they could create their own EBU list, although it may not have some of the names that ERIC would provide. Since 2022, 9 states have left ERIC and are creating their own EBU lists without disclosing private driver data to ERIC.

Simon and Maeda also argue that a preliminary injunction will be more difficult "for the state to learn that a given individual is registered to vote in both Minnesota and Wisconsin." Yet, the Secretary of State Office could obtain the publicly-available Wisvote database from Wisconsin Elections Commission and compare it to the Minnesota database. See https://badgervoters.wi.gov/img/Statement%20on%20

Data%20Availability%20and% 20Quality%201-2021_0.pdf (last visited: May 7, 2024).

So, Simon and Maeda do not have to share private driver data with ERIC to ensure

that a given individual is not registered to vote in both Minnesota and Wisconsin.

Finally, Simon and Maeda argue that AGA suffers no "harm" if the DPPA

violations occur. But, Congress has already decided that DPPA violations constitute

harm—so much so that Congress established a private cause of action and remedies

under 18 U.S.C. § 2724. In this case, Congress's statutory description of injury and

related remedies is decisive. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016)

(Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto

injuries that were previously inadequate in law.'"). Congress enacted the DPPA to

elevate governmental breaches of driver data privacy to the status of legally cognizable

injury even though such injuries were not previously so recognized. 18 U.S.C. § 2724.

## CONCLUSION

The Appellants seek a reversal of the district court judgment, a remand of the

case to the district court and a preliminary injunction.

Dated: May 7, 2024.                    /s/ Erick G. Kaardal
                                       Erick G. Kaardal, 229647
                                       Mohrman, Kaardal & Erickson, P.A.
                                       150 South Fifth Street, Suite 3100
                                       Minneapolis, Minnesota 55402
                                       Telephone: 612 341-1074
                                       Email: kaardal@mklaw.com
                                       *Attorneys for the Appellants*

Appellate Case: 24-1410   Page: 32   Date Filed: 05/08/2024 Entry ID: 5391683

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 (a)(7)

The undersigned certifies that the Brief submitted herein contains 6,499 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word 2016, the word processing system used to prepare this Brief.

Dated: May 7, 2024

/s/Erick G. Kaardal
Erick G. Kaardal, #229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

28

## Use of AI Technology Certification

Counsel attests that appropriate steps to verify whether AI technology systems have been used in preparation of this submission and if so, appropriate steps were taken, to the best of counsel's ability, to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: May 7, 2024

/s/Erick G. Kaardal
Erick G. Kaardal, #229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

29

**FOR DOCUMENTS FILED USING CM/ECF**

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on <u>May 7, 2024</u>, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Erick G. Kaardal</u>

30